**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

| | | |
|---|---|---|
| CANNA PROVISIONS, INC.; GYASI SELLERS; WISACRE FARM, INC.; VERANO HOLDINGS CORP. | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 23-cv-30113 |
| | ) | Leave to file granted on January 23, 2024 |
| MERRICK GARLAND, in his official Capacity as Attorney General of the United States | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

I.     Statutory Background ........................................................................................... 2

II.    Massachusetts Marijuana Laws ........................................................................... 3

III.   Plaintiffs' Complaint............................................................................................ 4

LEGAL STANDARD....................................................................................................... 5

ARGUMENT ................................................................................................................... 6

I.     Plaintiffs Lack Standing To Challenge The CSA's Prohibition Of
Marijuana Activities............................................................................................ 6

II.    Plaintiffs Fail To State A Claim That The CSA Exceeds Congress'
Power Under The Commerce Clause And Necessary And Proper Clause ...................... 10

        A.    Congress' Broad Commerce Power Includes The Power
To Regulate Classes Of Intrastate Economic Activity That,
In The Aggregate, Substantially Affect Interstate Commerce............................. 10

        B.    *Raich*, Which Held That The CSA's Application To Intrastate
Marijuana Is Within Congress' Power, Is Binding And Forecloses
Plaintiffs' Commerce Clause Claim .................................................................. 12

        C.    Plaintiffs' Attacks On *Raich* Are Unpersuasive .................................................... 14

III.   Plaintiffs Fail To State A Claim That The CSA Violates Substantive Due Process ........ 19

        A.    No Fundamental Right To Cultivate, Manufacture, Distribute,
or Possess Marijuana Exists.............................................................................. 20

        B.    The CSA's Regulation Of Marijuana Satisfies Rational Basis Scrutiny .............. 24

CONCLUSION................................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

*Adams v. Town of Montague,*
No. 14-30178-MGM, 2015 WL 1292402 (D. Mass. Mar. 23, 2015) ...................................... 6

*Albrecht v. Herald Co.,*
390 U.S. 145 (1968), *overruled*, 522 U.S. 3 (1997) ............................................... 14

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
576 U.S. 787 (2015) ............................................................................ 18

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................... 6

*California v. Texas,*
593 U.S. ----, 141 S. Ct. 2104 (2021) .......................................................... 8

*Chawla v. Pitter,*
No. 14-14303-GAO, 2015 WL 4363319 (D. Mass. July 16, 2015) ...................................... 13

*Cottone v. City of Boston,*
No. 1:22-CV-10285-AK, 2023 WL 168728 (D. Mass. Jan. 11, 2023) .................................. 10

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.,*
958 F.3d 38 (1st Cir. 2020) ......................................................... 6, 7, 9, 10

*Dee v. United States,*
241 F. Supp. 2d 50 (D. Me. 2003) .............................................................. 22

*Doe v. State ex rel. Legislature of 77th Session,*
406 P.3d 482 (Nev. 2017) ...................................................................... 22

*Gonzales v. Raich,*
545 U.S. 1 (2005) ....................................................................... *passim*

*Heckler v. Chaney,*
470 U.S. 821 (1985) ........................................................................... 19

*Heiner v. Donnan,*
285 U.S. 312 (1932) ........................................................................... 24

*Hoang v. United States,*
No. 12-12031-RGS, 2013 WL 140261 (D. Mass. Jan. 11, 2013) ......................................... 13

*Hochendoner v. Genzyme Corp.,*
823 F.3d 724 (1st Cir. 2016) ................................................................ 6, 8

*Holloman v. Greater Clev. Reg'l Trans. Auth.,*
No. 90-3473, 1991 WL 54885 (6th Cir. Apr. 12, 1991)........................................... 22

*Hoover v. Mich. Dep't of Licensing & Regul. Affs.*
   No. 19-CV-11656, 2020 WL 230136 (E.D. Mich. Jan. 15, 2020) ................................... 22, 23

*In re Inst. for Health Rsch. & Abunda Life Ctr.,*
   No. A-0069-11T3, 2013 WL 4458982 (N.J. App. Div. Aug. 22, 2013) ............................... 23

*Katz v. Pershing, L.L.C.*,
   672 F.3d 64 (1st Cir. 2012) ........................................................................... 10

*Krumm v. Holder,*
   No. 13-CV-0562 RB/SMV, 2014 WL 11497804 (D.N.M. Mar. 19, 2014),
   *aff'd*, 594 F. App'x. 497 (10th Cir. 2014) ............................................................ 22

*Kuromiya v. United States*,
   37 F. Supp. 2d 717 (E.D. Pa. 1999) .................................................................. 22

*Lewis v. Casey*,
   518 U.S. 343 (1996) ...................................................................................... 8

*La. Affiliate of Nat'l Org. for Reform of Marijuana L. v. Guste*,
   380 F. Supp. 404 (E.D. La. 1974), *aff'd*, 511 F.2d 1400 (5th Cir. 1975) ............................ 22

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................... 9

*Luna Perez v. Sturgis Pub. Schs.*,
   598 U.S. 142 (2023) .................................................................................... 25

*Mont. Cannabis Indus. Ass'n v. State*,
   286 P.3d 1161 (Mont. 2012) ............................................................................ 23

*Nat'l Coal. For Men v. Selective Serv. Sys.,*
   969 F.3d 546 (5th Cir. 2020) ........................................................................... 14

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) ..................................................................................... 10

*Nat'l Org. for Reform of Marijuana Laws v. Bell*,
   488 F. Supp. 123 (D.D.C. 1980) ........................................................................ 22

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*,
   45 F.4th 542 (1st Cir. 2022) ........................................................................... 13

*New State Ice Co. v. Liebmann*,
   285 U.S. 262 (1932) ..................................................................................... 19

*Raich v. Gonzales*,
   500 F.3d 850 (9th Cir. 2007) ........................................................................... 21

*Reddy v. Foster*,
   845 F.3d 493 (1st Cir. 2017) ............................................................................. 7

iii

*Roush v. White*,
    389 F. Supp. 396 (N.D. Ohio 1975) ........................................................................ 23

*Sacramento Nonprofit Collective v. Holder*,
    552 F. App'x. 680 (9th Cir. 2014) .......................................................................... 21

*Seeley v. State*,
    940 P.2d 604 (Wash. 1997) ................................................................................... 23

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997) ............................................................................................ 1, 14

*State v. Mallan*,
    950 P.2d 178 (Haw. 1998) .................................................................................... 22

*United States v. Amalfi*,
    47 F.4th 114 (2d Cir. 2022) ................................................................................. 21

*United States v. Bergdoll*,
    412 F. Supp. 1308 (D. Del. 1976) ......................................................................... 22

*United States v. Bilodeau*,
    24 F.4th 705 (1st Cir. 2022) ................................................................................ 18

*United States v. Burton*,
    894 F.2d 188 (6th Cir. 1990) ............................................................................... 24

*United States v. Edenfield*,
    No. 5:04-CR-8/MCR, 2006 WL 1029639 (N.D. Fla. Apr. 18, 2006) ................................... 22

*United States v. Fogarty*,
    692 F.2d 542 (8th Cir. 1982) ............................................................................... 22

*United States v. Fry*,
    787 F.2d 903 (4th Cir. 1986) .......................................................................... 22, 24

*United States v. Habib*,
    No. 18-CR-16, 2020 WL 3097819 (E.D. Wis. June 11, 2020) ......................................... 23

*United States v. Horsley*,
    519 F.2d 1264 (5th Cir. 1975) ............................................................................. 22

*United States v. Johnson*,
    No. CR 10-10087-NMG, 2022 WL 3327518 (D. Mass. Aug. 10, 2022) .............................. 21

*United States v. Kiffer*,
    477 F.2d 349 (2d Cir. 1973) ........................................................................... 21, 24

*United States v. Langley*,
    17 F.4th 1273 (9th Cir. 2021) .............................................................................. 21

*United States v. Lewis*,
    --- F. Supp. 3d ---, 2023 WL 4604563 (S.D. Ala. July 18, 2023) ............................................ 3

*United States v. Lopez*,
    514 U.S. 549 (1995) ...................................................................................... 1, 11

*United States v. Maas*,
    551 F. Supp. 645 (D.N.J. 1982) ................................................................................. 23

*United States v. Middleton*,
    690 F.2d 820 (11th Cir. 1982) ................................................................................. 24

*United States v. Moralez*,
    No. 92-1118, 1992 WL 401581 (10th Cir. Dec. 21, 1992) .................................................. 22

*United States v. Nascimento*,
    491 F.3d 25 (1st Cir. 2007).................................................................................. 17, 18

*United States v. Olea*,
    No. CR 14-10304-DPW, 2016 WL 8730167 (D. Mass. Aug. 12, 2016) ........................ 13, 24

*United States v. Pickard*,
    100 F. Supp. 3d 981 (E.D. Cal. 2015) .................................................................... 22

*United States v. Poulin*,
    631 F.3d 17 (1st Cir. 2011) ................................................................................ 17

*United States v. Robinson*,
    No. 1:18-CR-00228-01, 2020 WL 2476556 (W.D. La. May 13, 2020) ................................ 22

*United States v. White Plume*,
    447 F.3d 1067 (8th Cir. 2006) ............................................................................ 22, 24

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) .............................................................................. 20, 21, 22

*Washington v. Sessions*,
    No. 17-CV-5625 (AKH), 2018 WL 1114758 (S.D.N.Y. Feb. 26, 2018) .............................. 23

*Welch v. United States*,
    No. 7:16-CV-503, 2017 WL 3763857 (W.D. Va. Aug. 30, 2017) ........................................ 22

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
    418 F.3d 36 (1st Cir. 2005) ............................................................................ 20, 24

*Zarazua v. Ricketts*,
    No. 8:17-CV-318, 2017 WL 6503395 (D. Neb. Oct. 2, 2017) ............................................ 23

## U.S. CONSTITUTION

U.S. Const. amend. XIV ................................................................................... 20

U.S. Const. amend. V ........................................................................................... 19

U.S. Const. art. I, § 8, cl. 3 ................................................................................. 10

U.S. Const. art. I, § 8, cl. 18 ............................................................................... 10

**STATUTES**

*Federal*

21 U.S.C. § 801 ........................................................................................... 2, 15

21 U.S.C. § 811 ............................................................................................. 2, 3

21 U.S.C. § 812 ................................................................................................. 2

21 U.S.C. § 823 ................................................................................................. 3

21 U.S.C. § 841 ................................................................................................. 3

21 U.S.C. § 844 ............................................................................................. 2, 3

Fed. R. Civ. P. 12 ........................................................................................... 5, 6

*State*

Mass. Gen. Laws ch. 94G ................................................................................. 3

Mass. Gen. Laws ch. 94I .................................................................................. 3

**OTHER AUTHORITIES**

Canna Provisions, Frequently Asked Questions (last visited Jan. 17, 2024)
     https://cannaprovisions.com/faq/ ....................................................... 4, 16

Commonwealth of Massachusetts, Know the Laws, Cannabis Control Board (last visited
     Jan. 17, 2024), https://masscannabiscontrol.com/know-the-laws/ .............................. 4, 15, 16

## INTRODUCTION

Plaintiffs claim that the Controlled Substances Act's (CSA) prohibition on intrastate cultivation, manufacture, distribution, and possession of marijuana exceeds the federal government's power to regulate interstate commerce.  If that claim sounds familiar, it should.  In *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court considered and rejected a claim that Congress lacked authority to prohibit intrastate cultivation, distribution, and possession of marijuana that complied with state law, holding that "[t]he CSA is a valid exercise of federal power, even as applied to" intrastate cultivation, distribution, and consumption of marijuana in compliance with state law.  *Id.* at 9.  This case is a transparent entreaty to overrule *Raich*, but "it is [the Supreme] Court's prerogative alone to overrule one of its precedents."  *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).  In any event, Plaintiffs' attacks on *Raich* are unpersuasive.  Federal regulation of intrastate marijuana activities is constitutional because such activities "substantially affect interstate commerce."  *United States v. Lopez*, 514 U.S. 549, 559 (1995).

Plaintiffs get no further by claiming that the CSA violates their right to substantive due process.  Courts have consistently, and correctly, held that no fundamental right exists to distribute, possess, or use marijuana.  Therefore, the CSA is subject only to deferential rational basis review, which it easily survives.

Yet the Court should not even reach the merits because Plaintiffs lack standing to challenge the CSA.  To raise a pre-enforcement challenge to a law, a plaintiff must show a substantial risk of future enforcement.  Here, Plaintiffs allege the opposite, that the government's policy is *not* to prosecute conduct that complies with state marijuana laws.  Neither Plaintiffs' contention that they are harmed by *other* federal laws and policies whose constitutionality is not challenged here, nor Plaintiffs' allegations that some third parties have independently chosen not to transact with them, suffice to provide Plaintiffs with standing to challenge the CSA.

**BACKGROUND**

I.      **Statutory Background**

Before 1970, federal drug regulation primarily took the form of labeling requirements and revenue laws.  *See Raich*, 545 U.S. at 10.  One such law was the Marihuana Tax Act, enacted in 1937, which imposed "prohibitively expensive taxes" on marijuana that "practically curtailed the marijuana trade."  *Id.* at 11.  In 1970, Congress enacted the CSA, which "repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and interstate traffic in illicit drugs.  The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."  *Id.* at 12; *see generally* 21 U.S.C. § 801 *et seq.*  "To effectuate these goals, Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA."  *Raich*, 545 U.S. at 13; *see also* 21 U.S.C. § 841(a) (making it unlawful to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance" "[e]xcept as authorized by [the CSA]"); *id.* § 844(a) (making it unlawful "knowingly or intentionally to possess a controlled substance" unless through a valid prescription or "as otherwise authorized by" the CSA).

The CSA categorizes controlled substances in five schedules "based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Raich*, 545 U.S. at 13 (citing 21 U.S.C. §§ 811, 812).  At the time of the CSA's enactment in 1970, Congress classified marijuana (or "marihuana," as it is spelled in the CSA) on Schedule I, the most restrictive schedule.  21 U.S.C. § 812(c), Sch. I(c)(10).  This classification reflected Congress' finding, at that time, that marijuana "has a high potential for abuse," "no currently accepted medical use for treatment in the United States," and "a lack of accepted safety for use . . . under medical supervision."  *Id.* § 812(b)(1). Because marijuana is a Schedule I drug, "the manufacture,

2

distribution, or possession of marijuana [is] a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study." *Raich*, 545 U.S. at 14; *see also* 21 U.S.C. §§ 823(d), 841(a)(1), 844(a). The CSA sets forth a process authorizing the Attorney General to reschedule drugs or remove drugs from the CSA's schedules, based on scientific and medical recommendations from the Secretary of Health and Human Services, among other considerations. *See* 21 U.S.C. § 811. To this point, neither Congress nor the Attorney General have altered marijuana's Schedule I status.[1]

## II.    Massachusetts Marijuana Laws

In 1996, California became the first state to authorize medicinal use of marijuana under state law. *Raich*, 545 U.S. at 5. In 2012, voters of Colorado and Washington voted to authorize recreational use of marijuana under state law via ballot measure. *See United States v. Lewis*, --- F. Supp. 3d ---, 2023 WL 4604563, at *16 n.41 (S.D. Ala. July 18, 2023). Plaintiffs allege that thirty-eight states have now authorized medical use of marijuana, recreational use of marijuana, or both under state law. Compl. ¶ 8.

As relevant here, Massachusetts authorized medical marijuana under state law in 2012 and approved a ballot measure to authorize recreational marijuana (or "adult use" marijuana) under state law in 2016. Compl. ¶ 7; *see generally* M.G.L. c. 94G (medical marijuana); *id.* c. 94I (adult use marijuana). Massachusetts law requires that any marijuana products be grown, processed, distributed, and consumed within Massachusetts. Compl. ¶ 10. However, Massachusetts permits out-of-state visitors to purchase adult use marijuana, provided that they present a government-issued ID showing that they are at least 21 years old and do not transport the marijuana across state

---

[1] The Department of Health and Human Services (HHS) recently recommended rescheduling marijuana to Schedule III. The Drug Enforcement Administration (DEA) is currently considering that recommendation.

lines.  *See* Commonwealth of Massachusetts, Cannabis Control Board, *Know the Laws*, https://masscannabiscontrol.com/know-the-laws/ (last visited Jan. 17, 2024).  Plaintiff Canna Provisions advertises that it will sell marijuana to individuals over the age of 21 with a valid identification "from any state in the land" or "from any Canadian province."  Canna Provisions, *Frequently Asked Questions*, https://cannaprovisions.com/faq/ (last visited Jan. 17, 2024).  Last year, marijuana businesses in Massachusetts surpassed $4 billion in gross sales since 2012.  Compl. ¶ 78.

At various times, the Department of Justice has issued guidance to federal prosecutors encouraging them to exercise prosecutorial discretion to refrain from prosecuting certain marijuana activities that comply with state law and do not interfere with important federal interests, including in a memorandum known as the Cole Memorandum.  *See* Deputy Attorney General James M. Cole, Memorandum for all United States Attorneys: Guidance Regarding Marijuana Enforcement (Aug. 29, 2013) ("Cole Memorandum"); Compl. ¶¶ 26, 82.  Although the Cole Memorandum was since rescinded, Plaintiffs allege that the Department of Justice currently operates under a policy not to prosecute those who comply with state marijuana laws.  Compl. ¶ 83.

## III.    Plaintiffs' Complaint

Plaintiff Canna Provisions is a Massachusetts corporation that operates two retail adult-use marijuana dispensaries in Lee and Holyoke and a marijuana cultivation facility in Massachusetts. Compl. ¶ 32.  Plaintiff Gyasi Sellers is a Massachusetts resident who operates a courier service for adult use marijuana.  *Id.* ¶¶ 37-38.  He is in the process of obtaining licensing for a business that he intends to operate as a marijuana retailer and delivery service in Massachusetts.  *Id.* ¶ 39. Plaintiff Wiseacre Farm, Inc. operates a farm that grows marijuana in Massachusetts.  *Id.* ¶¶ 42-43.  Plaintiff Verano Holdings is a Canadian corporation that has wholly owned subsidiaries that engage in cultivation, processing, possession, and distribution of marijuana in Massachusetts.  *Id.*

¶ 45.   All Plaintiffs allege that their Massachusetts marijuana businesses are licensed by the Massachusetts Cannabis Control Commission and that these marijuana activities are intrastate and comply with Massachusetts law.  *Id.* ¶¶ 32, 38, 40, 42-43, 45.

Plaintiffs bring two claims.  In their first claim, Plaintiffs assert that the CSA's prohibition of "intrastate cultivation, manufacture, possession, and distribution of marijuana"[2] exceeds Congress's authority under the Commerce Clause and Necessary and Proper Clause as applied to marijuana activities that comply with state law.  *Id.* ¶¶ 99, 106.  In the second claim, Plaintiffs claim that the CSA's prohibition of marijuana activities that are authorized by state law violates the substantive due process component of the Fifth Amendment's Due Process Clause.  *Id.* ¶ 114. In support of that claim, Plaintiffs contend that "[t]he right to cultivate, manufacture, possess, and distribute marijuana, subject only to state health, safety, and public welfare regulations, is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty."  *Id.* ¶ 111.  Plaintiffs ask the Court to "[i]ssue a declaratory judgment that the Controlled Substances Act is unconstitutional as applied to the intrastate cultivation, manufacture, possession, and distribution of marijuana pursuant to state law[,]" and "[p]ermanently enjoin Defendant from enforcing the CSA (either alone or in conjunction with any other federal law such as the Bank Secrecy Act) in a manner that interferes with the intrastate cultivation, manufacture, possession, and distribution of marijuana, pursuant to state law[.]"  *Id.*, Prayer for Relief.

## LEGAL STANDARD

"Under a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction based solely on the pleadings, '[i]f the well-pleaded facts, evaluated in [the light most hospitable to the plaintiffs' theory of recovery and drawing all reasonable inferences in the plaintiffs' favor], do not

---

[2] This brief uses the phrase "marijuana activities" as a shorthand for cultivation, manufacture, possession, or distribution of marijuana.

support a finding of federal subject-matter jurisdiction,' the court must dismiss the action." *Adams v. Town of Montague*, No. Civ.A. 14-30178-MGM, 2015 WL 1292402, at *1 (D. Mass. Mar. 23, 2015) (quoting *Fothergill v. United States*, 566 F.3d 248, 251 & n.1 (1st Cir. 2009)). "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction[.]" *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). "[A]t the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." *Id.* at 731.

"[U]nder a Rule 12(b)(6) motion to dismiss for failure to state a claim, if a complaint, based on the well-pleaded factual allegations, fails to allege 'content that allows the court to draw the reasonable inference that the defendant is liable' based [on] a legally viable claim, it is subject to dismissal." *Adams*, 2015 WL 1292402, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Under . . . Rule 12(b)(6), '[a] plaintiff . . . may not rest merely on "unsupported conclusions or interpretations of law." ' " *Id.* at *1 n.3 (quoting *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    Plaintiffs Lack Standing To Challenge The CSA's Prohibition Of Marijuana Activities

To bring a suit in federal court, a plaintiff must have standing to sue.  To demonstrate standing, "[a] plaintiff must establish '(1) an injury in fact which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) that the injury is "fairly traceable to the challenged action," and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." ' " *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47

(1st Cir. 2020) (quoting *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 221-22 (1st Cir. 2019)).

Plaintiffs lack standing because they fail to allege that the CSA's prohibition of marijuana activities has caused them any injury. Plaintiffs claim that the federal government lacks constitutional authority in the CSA to "prohibit[] the intrastate cultivation, manufacture, possession, and distribution of marijuana." Compl. ¶ 99; *see also id.* ¶ 109 (challenging CSA, which "banned intrastate marijuana"); *id.* ¶ 6 (challenging "the federal government's unconstitutional ban on cultivating, manufacturing, distributing, or possessing intrastate marijuana"). Yet they do not allege that the Department of Justice has enforced the CSA against them to prohibit them from cultivating, manufacturing, possessing, or distributing marijuana. They do not allege, for example, that the Department of Justice has arrested or prosecuted them for violating the CSA or has seized any of their property. *Compare Raich*, 545 U.S. at 7 (plaintiff alleged that federal agents seized and destroyed her marijuana plants).

When a challenged law has not yet been enforced against a plaintiff, a plaintiff seeking to establish injury based on the potential for future enforcement must show that the alleged "injury is imminent," meaning that "it is certainly impending" or "there is a substantial risk that harm will occur." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). Plaintiffs conclusorily allege that the CSA "creates a risk of prosecution under federal law for Plaintiffs," Compl. ¶ 10, but a plaintiff's "conjectural fear" of enforcement is insufficient, *Reddy*, 845 F.3d at 503. Plaintiffs fail to allege facts showing that the risk of prosecution is substantial. In fact, Plaintiffs' allegations *negate* the existence of such a substantial risk. Plaintiffs allege that Department of Justice currently adheres to a "policy . . . not to 'pursue prosecutions of those who are complying with the laws in states that have legalized and are effectively regulating marijuana.'" Compl. ¶ 83. Plaintiffs further allege

that their marijuana activities comply fully with Massachusetts law.  *Id.* ¶¶ 32, 38, 40, 42-43, 45.
It follows that Plaintiffs have not alleged a substantial risk of prosecution.

Plaintiffs claim to be injured by other federal laws and policies, such as a Small Business
Administration policy to deny loans to marijuana businesses, *id.* ¶¶ 3, 41, a ban on marijuana in
federal public housing, *id.* ¶¶ 15, 41, 95, a tax law prohibiting drug traffickers from claiming
deductions or credits on their federal income taxes, *id.* ¶¶ 16, 97, and a federal firearms law
prohibiting possession of firearms in relation to a drug trafficking crime, *id.* ¶ 94.   However,
Plaintiffs do not claim that any of these laws or policies are unconstitutional or exceed the authority
of the federal government.   A claim that a plaintiff is harmed by one provision does not give that
plaintiff license to challenge the constitutionality of another provision, even where the provisions
are interconnected.   Such a situation arose in *California v. Texas*, 141 S. Ct. 2104 (2021), where
Texas and other states sued to challenge the constitutionality of the Affordable Care Act's
minimum essential coverage provision.   The states could not show harm caused by that provision,
but they claimed to be harmed by other provisions that cross-referenced the minimum essential
coverage provision.   *Id.* at 2120.   The Supreme Court held that the states lacked standing,
explaining that because the states did not "claim[] these other provisions violate the Constitution"
and they "attack[ed] the constitutionality of only the minimum essential coverage provision[,]"
they failed to show "an 'injury fairly traceable to the defendant's allegedly unlawful conduct.'"
*Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).   Because "standing is not
dispensed in gross," a plaintiff "who has been subject to injurious conduct of one kind" does not
"possess by virtue of that injury the necessary stake in litigating conduct of another kind . . . to
which he has not been subject."   *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also*
*Hochendoner*, 823 F.3d at 733 ("Suffering one species of injury does not confer standing on a

plaintiff to press claims based on another species of injury, even if the injuries share a common genus.").  Therefore, Plaintiffs cannot generate standing to challenge the CSA's prohibition on marijuana activities by asserting that they are harmed by other federal laws and policies whose constitutionality they do not challenge.

Finally, Plaintiffs allege that they have been harmed because certain third parties not before the Court — including financial services providers such as banks and insurers — have declined to transact with Plaintiffs.  *See, e.g.*, Compl. ¶ 11 (career services organization declined to post jobs for Plaintiff Canna Provisions); *id.* ¶ 12 (credit card processors refuse to work with Plaintiffs); *id.* ¶ 13 (some banks and insurers decline to lend to or insure marijuana businesses); *id.* ¶ 44 (landowner declined to lease land to Plaintiff Wiseacre).  These alleged harms fail the requirement that "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).  Therefore, "[c]ausation is absent if the injury stems from the independent action of a third party," unless the third party's action results from the "coercive effect" of a defendant's challenged action.  *Dantzler*, 958 F.3d at 47 (quotations omitted).

Plaintiffs do not allege that Defendant has coerced third parties not to transact with Plaintiffs.  To the contrary, Plaintiffs allege that some third parties, such as banks and insurers, do transact with Plaintiffs.  *See*, *e.g.*, Compl. ¶ 13 ("With fewer insurers willing to work with state-regulated marijuana businesses, insurance premiums are higher."); *id.* ¶ 36 ("Because many banks, insurance companies, and other providers refuse to work with state-regulated marijuana businesses, Canna Provisions has higher interest rates, insurance premiums, and payments for goods and services . . . ."); *id.* ¶ 43 ("only certain banks are willing to work with Wiseacre Farm");

*id.* ¶ 88 (marijuana businesses "have limited options for everything from leasing property to making job postings"); *id.* ¶ 91 (some "banks or credit unions . . . are willing to work with state-regulated marijuana companies"). The inescapable inference from these allegations is that third parties independently choose for themselves whether to transact with marijuana businesses. Plaintiffs lack standing to sue Defendant based on these choices made by third parties. *See Katz v. Pershing, LLC*, 672 F.3d 64, 71-72 (1st Cir. 2012) ("Because the opposing party must be the source of the harm, causation is absent if the injury stems from the independent action of a third party."); *Dantzler*, 958 F.3d at 48-49 (rejecting standing where harm resulted from charges collected by third parties); *Cottone v. City of Boston*, No. 1:22-CV-10285-AK, 2023 WL 168728, at *5 (D. Mass. Jan. 11, 2023) (plaintiff lacked standing to challenge city's COVID-19 vaccination order because alleged harms were caused by third parties).

## II.   Plaintiffs Fail To State A Claim That The CSA Exceeds Congress' Power Under The Commerce Clause And Necessary And Proper Clause

### A.   Congress' Broad Commerce Power Includes The Power To Regulate Classes Of Intrastate Economic Activity That, In The Aggregate, Substantially Affect Interstate Commerce

"[I]t is . . . well established that Congress has broad authority under the [Commerce] Clause[,]" including the authority to regulate "activities that 'have a substantial effect on interstate commerce.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012) (opinion of Roberts, C.J.) (quoting *United States v. Darby*, 312 U.S. 100, 118-19 (1941)).

The Commerce Clause authorizes Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]" U.S. Const., Art. I, § 8, cl. 3. The Necessary and Proper Clause authorizes Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers," including the commerce power. U.S. Const., Art. I, § 8, cl. 18. "The Commerce Clause emerged as the Framers' response to the

central problem giving rise to the Constitution itself: the absence of any federal commerce power under the Articles of Confederation." *Raich*, 545 U.S. at 16.

In the Republic's early years, Congress rarely enacted laws pursuant to its commerce power, and the Supreme Court's Commerce Clause jurisprudence dealt "almost entirely with the Commerce Clause as a limit on state legislation that discriminated against interstate commerce." *Lopez*, 514 U.S. at 553. The enactment of the Interstate Commerce Act in 1887 and the Sherman Antitrust Act in 1890 "ushered in a new era of federal regulation under the commerce power." *Id.* at 554. The Supreme Court initially responded to these laws by adopting a series of highly formalistic distinctions, holding "that Congress could not regulate activities such as 'production,' 'manufacturing,' and 'mining,'" and that the federal government could not regulate activities that "related to interstate commerce only indirectly." *Id.* at 554-55. However, in the late 1930s and 1940s, the Supreme Court repudiated its former approach to the Commerce Clause and "greatly expanded the previously defined authority of Congress under that Clause." *Id.* at 556 (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *Darby*, 312 U.S. 100; *Wickard v. Filburn*, 317 U.S. 111 (1942)). The Supreme Court expanded its interpretation of the federal commerce power in "recognition of the great changes that had occurred in the way business was carried on in this country" and based on its "view that earlier Commerce Clause cases artificially had constrained the authority of Congress to regulate interstate commerce." *Id.* at 556.

The Supreme Court now recognizes

three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. . . . Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. . . . Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, those activities that substantially affect interstate commerce.

*Id.* at 558-59 (citations omitted).

B.     *Raich*, **Which Held That The CSA's Application To Intrastate Marijuana Is Within Congress' Power, Is Binding And Forecloses Plaintiffs' Commerce Clause Claim**

As Plaintiffs concede, *Raich* "rejected a challenge to the CSA's regulation of non-commercial, intrastate medical marijuana production and use." Compl. ¶ 19. In *Raich*, the Supreme Court answered the question presented by Plaintiffs' first claim, holding that Congress' power under the Commerce Clause and Necessary and Proper Clause "includes the power to prohibit the local cultivation and use of marijuana in compliance with [state] law." *Raich*, 545 U.S. at 5. *Raich* involved a challenge to the CSA filed by two individuals who used marijuana in compliance with California's medical marijuana laws. One plaintiff grew her own marijuana; the other obtained locally grown marijuana from local caregivers free of charge. *Id.* at 7. *Raich* presented the question "whether Congress' power to regulate interstate markets for medicinal substances encompasses the portions of those markets that are supplied with drugs produced and consumed locally." *Id.* at 9. The Court answered unequivocally: "Well-settled law controls our answer. The CSA is a valid exercise of federal power, even as applied to" intrastate cultivation, distribution, and consumption of marijuana in compliance with state law. *Id.*

The Court explained that the Supreme Court's "case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17. A court's review of this question is deferential. A court "need not determine whether [plaintiffs'] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.* at 22. The Court concluded that regulation of local production and consumption of an agricultural commodity such as marijuana "is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity." *Id.* at 19.

12

*Raich*'s holding that the CSA is within Congress' power under the Commerce Clause and Necessary and Proper Clause, even as applied to intrastate marijuana activity compliant with state law, forecloses Plaintiffs' Commerce Clause claim. This Court and the First Circuit have repeatedly recognized *Raich*'s binding force. *See Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 547 (1st Cir. 2022) (*Raich* "explained that Congress did possess [the] authority" "under the Commerce Clause to 'prohibit the local cultivation and use of marijuana' even when undertaken in compliance with state law") (quoting *Raich*, 545 U.S. at 5); *United States v. Olea*, No. CR 14-10304-DPW, 2016 WL 8730167, at *4 (D. Mass. Aug. 12, 2016) ("the Supreme Court has held that the CSA represents a proper exercise of Congress' authority under the Commerce Clause"); *Chawla v. Pitter*, No. CV 14-14303-GAO, 2015 WL 4363319, at *2 (D. Mass. July 16, 2015) (argument that prosecution for intrastate marijuana activities exceeds federal power "is squarely foreclosed by *Gonzales v. Raich,* 545 U.S. 1 (2005) (holding that the Commerce Clause grants Congress authority to regulate intrastate marijuana use through enactment of the CSA)"). In one case, an individual who had been convicted of violating the CSA argued in a § 2255 petition that he received ineffective assistance of counsel in that his counsel did not argue that his prosecution exceeded federal power because his conduct consisted solely of intrastate possession and distribution of drugs, including marijuana. *Hoang v. United States*, No. Civ.A. 12-12031-RGS, 2013 WL 140261, at *2 (D. Mass. Jan. 11, 2013). Yet the Court reasoned that "[i]n light of" the "controlling precedent" of *Raich*, his "counsel would have only made himself look foolish by bringing a frivolous challenge to the court's jurisdiction." *Id.* Plaintiffs' challenge similarly contradicts the Supreme Court's holding in *Raich* and is equally fruitless.

Plaintiffs argue that circumstances have changed such that *Raich*'s holding affirming the CSA's constitutionality as applied to intrastate marijuana activities should be overruled. *See*

13

Compl. ¶ 19 (arguing that certain "facts" that the Supreme Court purportedly "rel[ied] on" in "reject[ing] a challenge to the CSA's regulation of non-commercial, intrastate medical marijuana production and use" are not "still true today"). However, "it is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil*, 522 U.S. at 20. In the Seventh Circuit decision under review in *State Oil*, Judge Posner explained that a prior Supreme Court decision (*Albrecht v. Herald Co.*, 390 U.S. 145 (1968), which held that vertical agreements to establish maximum prices were *per se* antitrust violations) had been undermined by developments in doctrine and economic theory, yet the Seventh Circuit applied *Albrecht* as binding precedent. The Supreme Court ultimately overruled *Albrecht*, but it explained that the Seventh Circuit "was correct in applying [*stare decisis*] despite disagreement with *Albrecht*" because lower courts are bound to follow Supreme Court precedent. *State Oil*, 522 U.S. at 20. Similarly, in adhering to Supreme Court precedent upholding the constitutionality of male-only selective service despite factual developments regarding the role of women in the military, the Fifth Circuit reasoned that even if "the factual underpinning of the controlling Supreme Court decision has changed, . . . that does not grant a court of appeals license to disregard or overrule that precedent." *Nat'l Coal. For Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020) (per curiam). As explained below, Plaintiffs' arguments against *Raich* lack merit. Yet even if this Court were sympathetic to Plaintiffs' arguments that *Raich*'s holding should no longer be good law, *stare decisis* commands that this Court adhere to *Raich* unless and until it is overruled by the Supreme Court.

### C.   Plaintiffs' Attacks On *Raich* Are Unpersuasive

Even if the Court were free to disregard *Raich*'s holding (it is not), Plaintiffs' attacks on that holding are unpersuasive. Plaintiffs argue that *Raich*'s validity has been undermined because they allege that three "facts" that the Court purportedly "rel[ied] on" in *Raich* are no longer "true today." Compl. ¶ 19. But Plaintiffs' factual allegations, even taken as true at this stage, cast no

doubt on *Raich*'s constitutional holding that Congress has power to regulate intrastate marijuana activities because such activities substantially affect interstate commerce.[3]

Plaintiffs first argue that Congress's finding that "distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances[,]" 21 U.S.C. § 801(4), is no longer true as applied to state-regulated intrastate marijuana activity.  *See* Compl. ¶¶ 19, 21. But *Raich* mentioned this finding only in a footnote (which contained a lengthy block quote of the CSA's findings), 545 U.S. at 12 n.20, and the Court explained that it would not place undue significance on congressional findings in judging the scope of Congress' authority: "while we will consider congressional findings in our analysis when they are available, the absence of particularized findings does not call into question Congress' authority to legislate," *id.* at 21.

Under *Raich*, the relevant question is whether intrastate economic activities "substantially affect interstate commerce," because "Congress has the power to regulate" such activities.  *Id.* at 17.  Here, it is even clearer than in *Raich* that the intrastate activities at issue substantially affect interstate commerce.   While *Raich* involved a plaintiff who grew marijuana for personal consumption and another plaintiff who obtained marijuana free of charge from local caregivers, 545 U.S. at 7, Plaintiffs here operate businesses that engage in commercial cultivation, manufacture, or sale of marijuana, *see* Compl. ¶¶ 32, 38-39, 42, 45, as part of a market that generates hundreds of millions of dollars in sales each year in Massachusetts, *see id.* ¶ 78 (more than $4 billion in gross sales since 2012), and explicitly caters to out-of-state visitors, *see* Commonwealth   of   Massachusetts,   Cannabis   Control   Board,   *Know   the   Laws*,

---

[3] The Complaint discusses Massachusetts's system of marijuana regulation but is bereft of allegations regarding state-regulated marijuana in other states.  Such a narrow examination of the relevant circumstances could not justify overruling *Raich*, even if Plaintiffs' arguments otherwise had merit and even were this Court the appropriate tribunal to reconsider *Raich*.

https://masscannabiscontrol.com/know-the-laws/ ("Out-of-state visitors can purchase marijuana" and "enjoy your purchase in Massachusetts"); Canna Provisions, *Frequently Asked Questions*, https://cannaprovisions.com/faq/ (Canna Provisions sells to visitors with valid identification "from any state in the land" or "from any Canadian province").

Indeed, Plaintiffs concede and affirmatively allege that intrastate marijuana activity substantially affects interstate commerce in marijuana.  According to Plaintiffs, "[t]he regulated market in Massachusetts, and the dozens of intrastate markets like it, have substantially reduced interstate commerce in marijuana by providing a regulated alternative for consumers."  Compl. ¶ 21 (emphasis omitted); *see also id.* ¶ 76 ("illicit interstate marijuana is being displaced with state-regulated, local marijuana"); *id.* ¶ 77 ("The states' medical and adult-use marijuana programs have drastically reduced illicit interstate and international commerce in marijuana.").  Where intrastate economic activity substantially affects interstate commerce, the precise nature of the economic interaction between the intrastate activity and interstate commerce does not affect Congress' authority to regulate the intrastate activity.  As *Raich* explained, where intrastate commerce and interstate commerce in a commodity is economically interconnected, it is "of no constitutional import" whether regulation of intrastate activity is meant to eradicate or support the interstate market.  *Raich*, 545 U.S. at 19 n.29; *see also id.* at 19 (upholding CSA because "Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control would . . . affect price and market conditions").

Plaintiffs next attack *Raich* because it treated marijuana as a "fungible commodity." Compl. ¶ 19.  According to Plaintiffs, state-regulated marijuana in Massachusetts is not "fungible" because Massachusetts has implemented a "seed-to-sale tracking system" that allows state-regulated marijuana to be identified and tracked.  *Id.* ¶¶ 22, 62-73.  But the First Circuit has already

rejected the contention that *Raich*'s reasoning is limited to fungible commodities.  In *United States v. Poulin*, 631 F.3d 17 (1st Cir. 2011), a criminal defendant argued that Congress could not criminalize intrastate production of child pornography and that *Raich* was distinguishable because unlike the marijuana in *Raich*, child pornography was "nonfungible."  *Poulin*, 631 F.3d at 21.  The First Circuit rejected this argument, explaining: "The proper query on an as-applied Commerce Clause challenge, however, relates only to whether the class of activities regulated is a class within the reach of federal power, and we 'refuse to accord decretory significance' to whether the commodity at issue is fungible."  *Id.* (quoting *United States v. Nascimento,* 491 F.3d 25, 42 (1st Cir. 2007)).  Therefore, even if the Court were to agree that marijuana under Massachusetts' system is not "fungible,"[4] that would not alter the constitutional analysis.

Finally, Plaintiffs argue that "the federal government has abandoned any goal of eliminating marijuana from interstate commerce."  Compl. ¶ 23 (emphasis and capitalization omitted).  As Plaintiffs acknowledge, the Supreme Court explained in *Raich* that the CSA's regulation of intrastate marijuana validly furthered "the federal interest in eliminating commercial transactions in the interstate market in their entirety."  *Raich*, 545 U.S. at 19; *see also* Compl. ¶ 23.  But Plaintiffs allege that the federal government has responded to state and local experimentation with marijuana decriminalization by engaging in several legislative and executive actions and policies that restrict or temper federal enforcement of the CSA as applied to marijuana.  *See* Compl.

---

[4] The ordinary meaning of "fungible" is "[c]ommercially interchangeable with other property of the same kind."  *Fungible*, Black's Law Dictionary (11th ed. 2019).  Plaintiffs' factual allegations, taken as true, would establish that regulated marijuana in Massachusetts is fungible with illicit marijuana because consumers can, and do, substitute one type of marijuana for the other.  *See* Compl. ¶ 21 ("The regulated market in Massachusetts . . . provid[es] a regulated alternative for consumers."); *id.* ¶ 77 ("state-regulated marijuana programs are depriving criminal organizations of a major source of illicit revenues" because users of illicit marijuana are switching to state-regulated marijuana).

¶¶ 24-26, 80-83.  These include appropriations riders that bar the Department of Justice from spending funds to prevent states from implementing medical marijuana laws, *see* Compl. ¶¶ 25, 80; *United States v. Bilodeau*, 24 F.4th 705, 714-15 (1st Cir. 2022) (interpreting appropriations riders to preclude prosecution of individuals for certain activity that complies with state medical marijuana laws), an alleged Department of Justice policy to exercise prosecutorial discretion not to prosecute those who are abiding by state marijuana laws, Compl. ¶ 83, and Congress' lack of interference with marijuana legalization laws in several federal territories, Compl. ¶ 81.

These alleged developments in federal marijuana policy do not call into question the constitutionality of the CSA under the deferential standard of review for federal commerce legislation.  "All that is necessary to deflect a Commerce Clause challenge to a general regulatory statute is a showing that the statute itself deals rationally with a class of activity that has a substantial relationship to interstate or foreign commerce." *Nascimento*, 491 F.3d at 42.  Plaintiffs do not dispute that as enacted, the CSA rationally served a legitimate federal interest in curtailing interstate marijuana transactions.  *See* Compl. ¶ 23; *see also infra* p. 24 & n.7 (cases upholding the CSA's regulation of marijuana on rational basis review).  Plaintiffs argue that the federal approach to marijuana has been rendered irrational by actions and alleged policies that have limited prosecutions for marijuana cultivation, manufacture, distribution, and possession.  However, these developments, which have given space for state and local experimentation with marijuana laws, serve a different purpose that the Supreme Court has long recognized as rational, and indeed, vital to our system of dual federal and state sovereignty: allowing states to serve as laboratories of democracy.  *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) ("This Court has 'long recognized the role of the States as laboratories for devising solutions to difficult legal problems.'") (quoting *Oregon v. Ice*, 555 U.S. 160, 171 (2009)).

Moreover, Plaintiffs allege that the Department of Justice has implemented a policy of prosecutorial discretion that guides federal law enforcement to focus enforcement resources "on persons or organizations whose conduct interferes" with important federal interests such as curtailing violence and gang activity, and otherwise to rely largely on "enforcement of state law by state and local law enforcement and regulatory bodies" to "address[] marijuana-related activity." Cole Memorandum at 2, 3; *see* Compl. ¶¶ 82-83 (alleging that the Department of Justice has continued to operate under policy similar to the Cole Memorandum after it was rescinded). Such a policy of prosecutorial discretion is surely rational.

The implication of Plaintiffs' arguments is that the only rational choices for the federal government in regulating marijuana would be to eliminate all federal regulation of state-regulated marijuana or to engage in aggressive enforcement of federal marijuana laws of the sort that led to the dispute in *Raich*. *See Raich*, 545 U.S. at 6 (federal agents entered respondent's home and seized and destroyed her marijuana plants). No law supports that proposition, which runs counter to our constitutional traditions of encouraging states to experiment with new policies, *see New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting), and the executive branch exercising discretion in determining when to enforce and prosecute federal laws. *Heckler v. Chaney*, 470 U.S. 821, 831-33 (1985). Indeed, given "the general unsuitability for judicial review of agency decisions to refuse enforcement[,]" *Id.* at 831, it would be anomalous if a concededly valid criminal statute could be deemed invalid because the Department of Justice allegedly has a policy discouraging aggressive enforcement of the statute.

## III.  Plaintiffs Fail To State A Claim That The CSA Violates Substantive Due Process

Although the Fifth Amendment's Due Process Clause speaks in terms of process, *see* U.S. Const., Amend. V ("nor shall any person . . . be deprived of life, liberty, or property, without due

process of law"),[5] the Supreme Court has recognized that in certain limited circumstances, it operates as a substantive limitation on governmental power. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests.").  However, "[w]hen economic legislation neither employs suspect classifications nor infringes on fundamental rights, the legislation need only survive rational basis scrutiny." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 53 (1st Cir. 2005).  Plaintiffs' primary substantive due process argument is that the CSA infringes on a purported fundamental right "to cultivate, manufacture, possess, and distribute marijuana, subject only to state health, safety, and public welfare regulations[.]"  Compl. ¶ 111.  But no such fundamental right exists, and the CSA easily satisfies rational basis scrutiny.

### A.   No Fundamental Right To Cultivate, Manufacture, Distribute, or Possess Marijuana Exists

The Supreme Court has warned that courts should approach with caution requests to recognize new fundamental rights that would trigger heightened scrutiny under the Due Process Clause.  Even the Supreme Court must "'exercise the utmost care whenever we are asked to break new ground in this field,' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court[.]"  *Glucksberg*, 521 U.S. at 720 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  Fundamental rights must be "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Id.* at 720-21 (citations and quotations omitted).  The Supreme Court has also "required in substantive-due-

---

[5] The Fourteenth Amendment similarly provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. XIV.  Some of the cases discussed in this section involve analysis of the Fourteenth Amendment's Due Process Clause as applied to state action.

process cases a 'careful description' of the asserted fundamental liberty interest." *Id.* at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Applying this stringent standard, courts have uniformly rejected the notion of any fundamental right to engage in marijuana activities. *See United States v. Johnson*, No. CR 10-10087-NMG, 2022 WL 3327518, at *4 (D. Mass. Aug. 10, 2022) ("no court has yet recognized such a right" to use medical marijuana). In *Johnson*, the Court rejected the argument "that the Due Process Clause embraces a fundamental right to medical marijuana use," finding "nothing to suggest that medical marijuana use is deeply rooted in our history and tradition." *Id.* at *4, 5.

Several circuits and many other courts agree. On remand from the Supreme Court in *Raich*, the Ninth Circuit rejected the plaintiff's substantive due process claim, because plaintiff could not show "that the right to use medical marijuana is 'fundamental' and 'implicit in the concept of ordered liberty.'" *Raich v. Gonzales*, 500 F.3d 850, 866 ("*Raich II*") (quoting *Glucksberg*, 521 U.S. at 720-21). An unpublished Ninth Circuit opinion likewise rejected the argument that "the substantive due process component of the Fifth Amendment . . . protect[s] a fundamental right to 'distribute, possess and use medical cannabis' in compliance with California state law." *Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680, 683 (9th Cir. 2014); *see also United States v. Langley*, 17 F.4th 1273, 1275 (9th Cir. 2021) (adhering to *Raich II*'s rejection of a fundamental right to use medical marijuana), *cert. denied* 142 S. Ct. 1398 (2022). Other circuits have similarly rejected a fundamental right either to use marijuana or to engage in commercial marijuana activity. *See United States v. Kiffer*, 477 F.2d 349, 352 (2d Cir. 1973) ("there is no colorable claim of a fundamental constitutional right to sell marihuana—even partisans of the old economic due process analysis might blush at that notion"); *United States v. Amalfi*, 47 F.4th 114, 124 & n.8 (2d Cir. 2022) (adhering to *Kiffer*'s rejection of fundamental right to sell marijuana);

*United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) ("There is no fundamental right to produce or distribute marijuana commercially."); *United States v. Horsley*, 519 F.2d 1264, 1265 (5th Cir. 1975) ("there is no fundamental right to sell marijuana or its derivatives"); *Holloman v. Greater Cleveland Reg'l Trans. Auth.*, No. 90-3473, 1991 WL 54885, at *2 (6th Cir. Apr. 12, 1991) (per curiam) ("There is no fundamental right to smoke marijuana[.]"); *United States v. Fogarty*, 692 F.2d 542, 547 (8th Cir. 1982) ("there is no fundamental constitutional right to import, sell, or possess marijuana"); *United States v. Moralez*, No. 92-1118, 1992 WL 401581, at *1 (10th Cir. Dec. 21, 1992) ("as federal case law makes clear, there is 'no fundamental right to produce or distribute marijuana commercially'") (quoting *Fry*, 787 F.2d at 905); *cf. United States v. White Plume*, 447 F.3d 1067, 1075 (8th Cir. 2006) (rejecting a fundamental right to farm hemp).  So have many district courts and state courts.[6]

---

[6] *See Nat'l Org. for Reform of Marijuana Laws v. Bell*, 488 F. Supp. 123, 132 (D.D.C. 1980) ("Smoking marijuana does not qualify as a fundamental right[.]"); *United States v. Robinson*, No. 3:18-cr-00228-01, 2020 WL 2476556, at *4 (W.D. La. May 13, 2020) ("there is no fundamental right to possess, use, or distribute marijuana"); *Dee v. United States*, 241 F. Supp. 2d 50, 51 (D. Me. 2003) ("It has long been established that use of marijuana is *not* a fundamental right protected by the Constitution."); *Krumm v. Holder*, No. 13-cv-0562 RB/SMV, 2014 WL 11497804, at *6 (D.N.M. Mar. 19, 2014) ("smoking, using, possessing, or manufacturing marijuana is not a fundamental right."), *aff'd*, 594 F. App'x 497 (10th Cir. 2014); *Kuromiya v. United States*, 37 F. Supp. 2d 717, 725 (E.D. Pa. 1999) ("there is no constitutional provision by which one can discern a fundamental right to possess, use, grow, or sell marijuana"); *Welch v. United States*, No. 7:16-cv-503, 2017 WL 3763857, at *3 (W.D. Va. Aug. 30, 2017) ("[Plaintiff] does not have a federally protected right to possess, use, or distribute marijuana and, thus, he has not demonstrated a violation of his rights to due process."); *State v. Mallan*, 950 P.2d 178, 183 (Haw. 1998) (plurality op.) ("the right to possess and use marijuana cannot be considered a 'fundamental' right that is 'implicit in the concept of ordered liberty'"); *Doe v. State ex rel. Legislature of 77th Session*, 406 P.3d 482, 485 (Nev. 2017) ("We hold that the right to use medical marijuana recommended by a physician is not so 'deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the right was] sacrificed.'") (quoting *Glucksberg*, 521 U.S. at 721); *see also*, *e.g.*, *United States v. Pickard*, 100 F. Supp. 3d 981, 1003 (E.D. Cal. 2015); *United States v. Bergdoll*, 412 F. Supp. 1308, 1313 (D. Del. 1976); *United States v. Edenfield*, No. 5:04-CR-8/MCR, 2006 WL 1029639, at *3 (N.D. Fla. Apr. 18, 2006); *Louisiana Affiliate of Nat'l Org. for Reform of Marijuana L. v. Guste*, 380 F. Supp. 404 (E.D. La. 1974), *aff'd*, 511 F.2d 1400 (5th Cir. 1975); *Hoover v. Mich. Dep't of Licensing &*

Plaintiffs offer no basis for this Court to depart from this uniform and extensive authority. To the contrary, Plaintiffs' allegations confirm that these courts were correct to conclude that a fundamental right to engage in marijuana activities is neither deeply rooted in this Nation's history and tradition nor implicit in the concept of ordered liberty.  Rather, marijuana has been extensively regulated, and often banned, for most of American history.  Plaintiffs acknowledge that "[d]uring [the] period" in the 1800s when marijuana use began to become more common, states reacted by regulating it, including by banning its use or sale.  Compl. ¶ 49.  In the early 20th century, "more states . . . ban[ned] the plant." *Id.* ¶ 51.  By 1970, when Congress banned marijuana through the CSA, marijuana was "already banned in all 50 states." *Id.* ¶ 53.  Extensive federal regulation of marijuana also has a long history.  In 1937, Congress enacted the Marihuana Tax Act, Compl. ¶ 52, imposing "onerous administrative requirements" and "prohibitively expensive taxes" on marijuana transactions, which "practically curtailed the marijuana trade." *Raich*, 545 U.S. at 11.

Plaintiffs cannot circumvent this precedent and history by attempting to define the fundamental right at issue as a "right to cultivate, manufacture, possess, and distribute marijuana, *subject only to state health, safety, and public welfare regulations*[.]"  Compl. ¶ 111 (emphasis added).  As an initial matter, Plaintiffs do not allege that states have historically recognized a right to engage in marijuana activities.  Furthermore, substantive due process is not a federalism principle that privileges state regulation over federal regulation.  Rather, it is a protection of

---

*Regul. Affs.*, No. 19-cv-11656, 2020 WL 230136, at *10 (E.D. Mich. Jan. 15, 2020); *Zarazua v. Ricketts*, 8:17-cv-318, 2017 WL 6503395, at *2 (D. Neb. Oct. 2, 2017); *United States v. Maas*, 551 F. Supp. 645, 646 (D.N.J. 1982); *Washington v. Sessions*, No. 17-cv-5625 (AKH), 2018 WL 1114758, at *9 (S.D.N.Y. Feb. 26, 2018); *Roush v. White*, 389 F. Supp. 396, 400 (N.D. Ohio 1975); *United States v. Habib*, No. 18-cr-16, 2020 WL 3097819, at *2 (E.D. Wis. June 11, 2020); *Montana Cannabis Indus. Ass'n v. State*, 286 P.3d 1161, 1168 (Mont. 2012); *Seeley v. State*, 940 P.2d 604, 613 (Wash. 1997); *In re Inst. for Health Rsch. & Abunda Life Ctr.*, No. A-0069-11T3, 2013 WL 4458982, at *7 (N.J. App. Div. Aug. 22, 2013).

individual liberty that operates equivalently on the federal government (through the Fifth Amendment) and state governments (through the Fourteenth Amendment). *See Heiner v. Donnan*, 285 U.S. 312, 326 (1932) ("The restraint imposed upon legislation by the due process clauses of the [Fifth Amendment and Fourteenth Amendment] is the same."). The notion that substantive due process prohibits federal regulation of marijuana activities while permitting state regulation of the same activities finds no support in constitutional text or precedent.

### B.      The CSA's Regulation Of Marijuana Satisfies Rational Basis Scrutiny

Because there is no fundamental right to cultivate, manufacture, distribute, or possess marijuana, the CSA's regulation of marijuana is subject only to the minimal scrutiny of the rational basis test, under which "an inquiring court must uphold the legislation as long as the means chosen by the legislature are rationally related to some legitimate government purpose." *Wine & Spirits Retailers*, 418 F.3d at 53. This Court and others have uniformly held that in light of the information available to Congress about marijuana's effects, Congress acted rationally in classifying marijuana as a Schedule I controlled substance in the CSA and thereby prohibiting its cultivation, distribution, manufacture, and possession. *See, e.g., Olea*, 2016 WL 8730167, at *5 ("Every federal circuit court to consider the constitutionality of the scheduling of marijuana as a Class I drug has applied the rational basis standard of review and upheld the statute.") (collecting cases).[7]

---

[7] *See also Kiffer*, 477 F.2d at 352-53 ("[A]ppellants must establish that prohibition of commercial distribution of marihuana lacks any reasoned justification. They have not succeeded in doing so."); *Fry*, 787 F.2d at 905 (noting "conflicting medical and scientific data bearing upon the harmfulness of marijuana" and concluding that "[u]pon the conflicting evidence, we cannot agree that the congressional decision to prohibit marijuana production and distribution was so irrational as to deprive Fry of due process"); *United States v. Burton*, 894 F.2d 188, 192 (6th Cir. 1990) ("[O]ur inquiry is limited to the question of whether classification [of marijuana in Schedule I of the CSA] is irrational or unreasonable. There has been no such showing here.") (cleaned up); *White Plume*, 447 F.3d at 1075 ("ongoing debate about the physical and psychological effects of marijuana and whether it had any medicinal value was a sufficiently rational reason for Congress to include marijuana on Schedule I"); *United States v. Middleton*, 690 F.2d 820, 823 (11th Cir. 1982)

Congress also rationally set up an administrative process for rescheduling drugs.  Pursuant to that mechanism, the DEA is currently considering HHS's recommendation to reschedule marijuana.  *See supra*, p. 3 & n.1.  It is not for the courts to disrupt or get ahead of that administrative process.

Plaintiffs do not dispute that as enacted, the CSA rationally served legitimate government purposes.  *See* Compl. ¶ 2.  Yet they argue that the CSA has been rendered irrational because Congress has chosen to allow federal territories to enact marijuana legalization laws and has prohibited the Department of Justice on spending funds to prevent implementation of state medical marijuana laws, *id.* ¶ 24-25, 80-81, while the Department of Justice has allegedly exercised prosecutorial discretion to decline to prosecute conduct that complies with state marijuana laws under certain circumstances, *id.* ¶¶ 26-27, 82-83.  Yet as explained above, these actions and inactions serve the rational purpose of facilitating state and local experimentation with marijuana laws while focusing federal law enforcement resources on conduct that most significantly affects federal interests.  *See supra*, pp. 18-19.  "[N]o law pursues its purposes at all costs."  *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (cleaned up).  Plaintiffs' contention that the goal of federal marijuana policy now falls somewhere between total eradication and total legalization does not call into question the validity of the CSA under the rational basis test.

## CONCLUSION

For the forgoing reasons, the Court should dismiss the Complaint.

---

(rejecting argument that "the congressional classification [of marijuana] is unreasonable or irrational").

Dated:  January 23, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN (Mass. Bar #
688968)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

On January 23, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Massachusetts, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*