**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

———————————————————————

CANNA PROVISIONS, INC.; GYASI
SELLERS; WISACRE FARM, INC.;
VERANO HOLDINGS CORP.

          Plaintiffs,

        v.

MERRICK GARLAND, in his official
Capacity as Attorney General of the United
States

          Defendant.

———————————————————————

No. 23-cv-30113
Leave to file granted on December 18, 2023

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    Plaintiffs Lack Standing To Challenge The CSA's Prohibition Of Marijuana Activities .. 2

II.    Plaintiffs Fail To State A Claim Under The Commerce Clause And Necessary And Proper Clause ......................................................................................................... 5

    A.    *Gonzales v. Raich* Forecloses Plaintiffs' Claim ........................................ 5

    B.    The CSA Constitutionally Regulates Intrastate Economic Activity That Substantially Affects Interstate Commerce ............................................. 7

III.    Plaintiffs Fail to State a Substantive Due Process Claim ................................... 14

CONCLUSION .............................................................................................................. 15

i

## TABLE OF AUTHORITIES

### CASES

*Albrecht v. Herald Co.*,
    390 U.S. 145 (1968) ................................................................................................ 6

*California v. Texas*,
    593 U.S. 659 (2021) ............................................................................................... 4

*Children's Health Def., Inc. v. Rutgers*,
    93 F.4th 66 (3d Cir. 2024) ................................................................................ 9, 12

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992) ............................................................................................. 15

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020) ................................................................................... 4

*Gonzales v. Raich*,
    545 U.S. 1 (2005) .......................................................................................... *passim*

*Heart of Atlanta Motel, Inc. v. United States*,
    379 U.S. 241 (1964) ........................................................................................ 10, 12

*Heller v. Doe*,
    509 U.S. 312 (1993) ............................................................................................. 12

*Hodel v. Indiana*,
    452 U.S. 314 (1981) ........................................................................................... 8, 9

*Int'l Game Tech. PLC v. Garland*,
    628 F. Supp. 3d 393 (D.R.I. 2022) ....................................................................... 3

*Kyle-Labell v. Selective Serv. Sys.*,
    364 F. Supp. 3d 394 (D.N.J. 2019) ...................................................................... 7

*Mont. Caregivers Ass'n, LLC v. United States*,
    526 F. App'x 756 (9th Cir. 2013) ......................................................................... 6

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
    969 F.3d 546 (5th Cir. 2020) ......................................................................... 1, 6, 7

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*,
    45 F.4th 542 (1st Cir. 2022) ................................................................................. 5

ii

*Piper v. Talbots, Inc.*,
   507 F. Supp. 3d 339 (D. Mass. 2020) ................................................................. 10

*Roper v. Simmons*,
   543 U.S. 551 (2005) ....................................................................................... 7

*Standing Akimbo, LLC v. United States*,
   141 S. Ct. 2236 (2021) ................................................................................. 12

*Standing Akimbo, Inc. v. United States through Internal Revenue Serv.*,
   No. 21-1379, 2023 WL 569405 (10th Cir. Jan. 27, 2023), *cert. denied*
   143 S. Ct. 2613 (2023) ................................................................................. 6

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997) ......................................................................................... 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ..................................................................................... 2

*United States v. Assorted Drug Paraphernalia Valued at $29,627.07*,
   No. 2:18-cv-143-GJF-SMV, 2018 WL 6630524 (D.N.M. Dec. 19, 2018) ............... 3

*United States v. Bilodeau*,
   24 F.4th 705 (1st Cir. 2022) ....................................................................... 10

*United States v. Daleman*,
   No. 1:11-cr-00385-DAD-BAM, 2017 WL 1256743 (E.D. Cal. Feb. 17, 2017) .......... 11

*United States v. Kleinman*,
   880 F.3d 1020 (9th Cir. 2017) ...................................................................... 10

*United States v. Knutson*,
   113 F.3d 27 (5th Cir. 1997) ........................................................................... 9

*United States v. Lopez*,
   514 U.S. 549 (1995) ..................................................................................... 8

*United States v. Marcinkewciz*,
   543 F. App'x 513 (6th Cir. 2013) ................................................................... 5

*United States v. Nascimento*,
   491 F.3d 25 (1st Cir. 2007) ...................................................................... 8, 11

*United States v. Pickard*,
   100 F. Supp. 3d 981 (E.D. Cal. 2015) ............................................................ 9

*United States v. Poulin,*
   631 F.3d 17 (1st Cir. 2011) .................................................................... 11

*United States v. Trevino,*
   7 F.4th 414 (6th Cir. 2021) .................................................................... 10

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ............................................................................... 15

*Wickard v. Filburn,*
   317 U.S. 111 (1942) ............................................................................. 8, 11

*Wine & Spirits Retailers, Inc. v. Rhode Island,*
   418 F.3d 36 (1st Cir. 2005) .................................................................... 15

## OTHER AUTHORITIES

Canna Provisions,
   https://cannaprovisions.com ................................................................. 10

Deputy Attorney General James M. Cole, Memorandum for all United States Attorneys:
   Guidance Regarding Marijuana Enforcement, (Aug. 29, 2013) ............................ 13

*Fungible*, Black's Law Dictionary (11th ed. 2019) ...................................... 11

Nancy Macy on behalf of 1Berkshire, The Complete Guide to Cannabis in the Berkshires
   (Jan. 5, 2024), https://berkshires.org/the-complete-guide-to-cannabis-in-the-berkshires/ ....... 10

Visit the Berkshires | Official Guide to The Berkshire's, MA, Berkshires.org ........................... 10

## INTRODUCTION

Plaintiffs' primary claim, that the Controlled Substances Act (CSA) exceeds Congress's power under the Commerce Clause and Necessary and Proper Clause as applied to intrastate marijuana activities, is foreclosed by *Gonzales v. Raich*, 545 U.S. 1 (2005). Plaintiffs' argument that "the factual underpinning of the controlling Supreme Court decision has changed . . . does not grant" a lower court "license to disregard or overrule that precedent." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020). Yet Plaintiffs' arguments would fail even if not squarely foreclosed by *Raich*. Plaintiffs ask this Court to impose a form of heightened scrutiny under which a statute must be essential to counter a threat to a national market, but the Supreme Court has repeatedly held that the rational basis standard applies to Commerce Clause legislation, and the CSA easily survives that deferential review. Plaintiffs argue that federal marijuana policy no longer serves a goal of *eradicating* the marijuana trade, yet even if that is true, *curtailing* the marijuana trade is a legitimate objective regardless of whether the government pursues that objective to the point of eradication. Plaintiffs also cannot show that any way in which federal marijuana policy is irrational, when they allege that federal policy focuses law enforcement resources on marijuana activities that most implicate vital federal interests such as preventing violence and protecting public safety.

Plaintiffs barely attempt to defend the legal contention underlying their substantive due process claim, which contradicts uniform case law, that a fundamental right exists to operate a marijuana business. The claim accordingly fails, because the CSA survives rational basis review.

But this Court need not assess Plaintiffs' legal claims in the first instance, because Plaintiffs also fail to rebut Defendant's showing that Plaintiffs lack standing. Plaintiffs cannot establish a credible threat of future enforcement of the CSA, when they allege that the Department of Justice has a policy not to prosecute their alleged conduct. Plaintiffs' claimed economic harm does not

establish standing to challenge the CSA because it allegedly results from the independent decisions of third parties not to transact with Plaintiffs and other statutes whose constitutionality Plaintiffs do not challenge.

## ARGUMENT

## I.  Plaintiffs Lack Standing To Challenge The CSA's Prohibition Of Marijuana Activities

Plaintiffs lack standing to sue.  Because they allege that the Department of Justice adheres to a policy of not prosecuting those who engage in Plaintiffs' conduct, they cannot establish a credible threat of future enforcement.  Memorandum in Support of Motion to Dismiss Complaint, ECF No. 30, at 7-8 ("Mem.").  And harm allegedly caused by (a) the independent decisions of third parties not to transact with Plaintiffs, and (b) other laws that are not challenged here, are not fairly traceable to the CSA's allegedly unconstitutional prohibition of marijuana activities.  Mem. 8-10.  Plaintiffs' opposition fails to establish otherwise.  *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, ECF No. 36, at 3-10 ("Opp'n").

Plaintiffs argue that they have standing based on the "threat of prosecution by Defendant under the CSA."  Opp'n 4.  Yet they acknowledge that such standing requires showing a "credible threat of prosecution."  *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).  The Sessions Memo, which instructs "federal prosecutors deciding which cases to prosecute to weigh all relevant considerations," Declaration of Joshua Schiller, Exhibit A, ECF No. 37-1 (Schiller Decl.), does not state that the Department of Justice should prosecute based on intrastate marijuana activities that comply with state law.  Even if it indicated such a threat during Attorney General Sessions' tenure, which is doubtful,[1] Plaintiffs allege that the current Attorney General

---

[1] Plaintiffs cite no examples of such prosecutions during Attorney General Sessions' tenure, or since.

has adopted a "policy . . . not to pursue prosecutions of those who are complying with the laws in states that have legalized and are effectively regulating marijuana." Compl. ¶ 83, ECF No. 1 (footnote omitted).[2] Plaintiffs cite case law indicating a "background assumption" that the government will enforce statutes that are on the books "absent evidence to the contrary," *Int'l Game Tech. PLC v. Garland*, 628 F. Supp. 3d 393, 400 (D.R.I. 2022), but here Plaintiffs allege contrary evidence: the existence of a policy *not* to enforce the statute based on Plaintiffs' alleged conduct.

Plaintiffs' citation of two civil forfeiture proceedings from several years ago do not establish a threat of prosecution based on marijuana activities that comply with state law, as neither involved conduct that complied with state law. In one proceeding, the claimant operated a marijuana paraphernalia store; the court concluded that although New Mexico law authorized the use of medical marijuana, it did not authorize the sale of marijuana paraphernalia. *See United States v. Assorted Drug Paraphernalia Valued at $29,627.07*, No. 2:18-cv-143-GJF-SMV, 2018 WL 6630524, at *8-9 (D.N.M. Dec. 19, 2018). In the other, the claimant allegedly violated Kansas law by transporting marijuana proceeds through Kansas, a state that had did not authorize use of marijuana or transport of marijuana proceeds, and the United States ultimately decided not to pursue the forfeiture.[3] Plaintiffs also cannot establish a credible threat of prosecution by citing Drug Enforcement Administration guidance stating that registered pharmacies may not sell

---

[2] Plaintiffs also allege that Attorney General Sessions' successor William Barr "insisted that he would not go after companies that rely on the Cole Memorandum." Compl. ¶ 83 (footnote omitted).

[3] *See* Mot. for Partial Summary Judgment, *United States v. $165,620.00 in U.S. currency*, No. 6:21-cv-01215-HLT-KGG, ECF No. 46, at 5-6 (D. Kan. June 13, 2022); Mot. to Dismiss, *id.*, ECF No. 80 (D. Kan. Nov. 15, 2022).

marijuana, Schiller Decl. Ex. C, ECF No. 37-3, because they do not allege that they operate pharmacies.

Plaintiffs likewise fail to establish standing based on economic harm.  Although economic harm is an injury-in-fact, Plaintiffs do not show that their alleged economic harms are traceable to Defendant's constitutional violation.  Plaintiffs argue that the decisions of third parties not to transact with Plaintiffs are traceable to Defendant, but the First Circuit has held that "[c]ausation is absent if the injury stems from the independent action of a third party," unless the third party's action results from the "coercive effect" of a defendant's challenged action.  *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (citation omitted). Plaintiffs do not allege any actions that Defendant has taken to coerce any of the third parties who have declined to transact with Plaintiffs.  And they do not and cannot dispute that the Complaint alleges that some third parties *have* decided to transact with Plaintiffs, while others have declined to do so.  Mem. 9-10; Opp'n 7 n.5 (noting that "some banks are willing to transact with Plaintiffs").

Finally, Plaintiffs cannot establish standing by alleging that they are harmed by other statutes, whose constitutionality is not challenged here, that cross-reference the CSA.  Mem. 8-9. Plaintiffs acknowledge that in *California v. Texas*, 593 U.S. 659 (2021), the Supreme Court rejected standing based on a theory that a plaintiff was harmed by statutory provisions other than the provision challenged as constitutional.  Plaintiffs argue that *California* is distinguishable because here, the statutes that allegedly harm them directly reference and depend on definitions in the CSA.  Opp'n 9.  But the same was true in *California*, where the provisions that allegedly harmed the plaintiffs referenced and incorporated definitions from the challenged individual mandate.  593 U.S. at 680.

II.     **Plaintiffs Fail To State A Claim Under The Commerce Clause And Necessary And Proper Clause**

A.      ***Gonzales v. Raich* Forecloses Plaintiffs' Claim**

In *Raich*, the Supreme Court held that Congress had the power under the Commerce Clause and Necessary and Proper Clause to regulate intrastate marijuana activity that complied with state law (in that case, California's medical marijuana law). *Raich*, 545 U.S. at 5. *Raich*'s constitutional holding is controlling here because the Supreme Court is the only court with the power to overrule its holding in *Raich*, which would be necessary to sustain Plaintiffs' Commerce Clause and Necessary and Proper Clause claim. Mem. 12-14.

In arguing otherwise, Plaintiffs assert that *Raich* is not binding here because it was limited to its particular facts. Opp'n 23. But the *Raich* court expressed its holding as a constitutional rule. The Court held that Congress' power under the Commerce Clause and Necessary and Proper Clause "includes the power to prohibit the local cultivation and use of marijuana in compliance with [state] law," *Raich*, 545 U.S. at 5, explaining that "[t]he CSA is a valid exercise of federal power, even as applied to" "the portions of" marijuana markets "that are supplied with drugs produced and consumed locally," *id.* at 9. The First Circuit has understood *Raich* as standing for the proposition that "Congress did possess [the] authority" "under the Commerce Clause to 'prohibit the local cultivation and use of marijuana' even when undertaken in compliance with state law." *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 547 (1st Cir. 2022) (quoting *Raich*, 545 U.S. at 5). Other circuits have similarly understood *Raich* to contain such a broad holding, and have held that *Raich* forecloses challenges to the CSA as applied to intrastate marijuana activities.[4] The fact that Plaintiffs raise an as-applied challenge to

---

[4] *See United States v. Marcinkewciz*, 543 F. App'x 513, 516 (6th Cir. 2013) (constitutional challenge to CSA asserted by criminal defendants who asserted they manufactured marijuana pursuant to Michigan's medical marijuana law was "foreclosed by *Raich*" because in *Raich*, "[t]he

the CSA rather than a facial challenge does not change the binding force of *Raich* because both *Raich* and this case involved the same application of the CSA: regulation of intrastate marijuana activities that comply with state law.

Plaintiffs' assertion that *Raich* is no longer binding because of purported "significant changes in legislative and operative facts," Opp'n 23, violates the Supreme Court's instruction that lower courts must leave to the Supreme Court its sole "prerogative . . . to overrule one of its precedents," *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).   In *State Oil*, the Supreme Court recognized that relevant facts had changed since the Court had issued an earlier decision (*Albrecht v. Herald Co.*, 390 U.S. 145 (1968)), *see State Oil*, 522 U.S. at 19 ("*Albrecht*'s dire predictions have not been borne out, even though manufacturers and suppliers appear to have fashioned schemes to get around the *per se* rule against vertical maximum price fixing").   Even though the Supreme Court overruled *Albrecht*, it indicated that the Seventh Circuit in the decision below "was correct in applying" *Albrecht* before it was overruled, *State Oil*, 522 U.S. at 20.   Similarly, the Fifth Circuit recently adhered to a Supreme Court decision upholding the male-only selective service, concluding that even though "the factual underpinning of the controlling Supreme Court decision has changed" because women are now permitted to serve in combat roles in the military, "that does not grant a court of appeals license to disregard or overrule that precedent."   *Nat'l Coal.*

---

Supreme Court held that the CSA's prohibition of marijuana cultivation was a valid exercise of Congress's commerce power"); *Mont. Caregivers Ass'n, LLC v. United States,* 526 F. App'x 756, 758 (9th Cir. 2013) (court "may not" consider claim of Montana medical marijuana growers that CSA "exceeded Congress' commerce power," because "we are bound by *Raich I*, a directly controlling decision by the Supreme Court") (cleaned up); *Standing Akimbo, Inc. v. United States through Internal Revenue Serv.*, No. 21-1379, 2023 WL 569405, at *6 (10th Cir. Jan. 27, 2023) (claim that "Congress lacks the authority to regulate [Colorado] marijuana dispensary is misplaced" because "[t]he Supreme Court resolved this question more than fifteen years ago when it decided *Gonzales v. Raich*," and "[w]e will continue to faithfully apply *Gonzales v. Raich* unless the Supreme Court instructs us otherwise"), *cert. denied* 143 S. Ct. 2613 (2023).

*for Men*, 969 F.3d at 549-50.  That is because a lower court may not "disregard a Supreme Court decision as to the constitutionality of the exact statute at issue here because some key facts implicated in the Supreme Court's decision have changed."  *Id.* at 550.[5]

Plaintiffs cite *Roper v. Simmons*, 543 U.S. 551 (2005), but *Roper* is irrelevant to the question at hand.  In *Roper*, the Supreme Court affirmed a Missouri Supreme Court opinion and overruled earlier Supreme Court precedent in holding that the death penalty was unconstitutional as applied to juvenile offenders.  *Id.* at 564-575.  But the Supreme Court majority was "silent[]" on whether the Missouri Supreme Court should have adhered to the Supreme Court's prior decision before it was overruled.  *Id.* at 629 (Scalia, J., dissenting).  *Roper* therefore casts no doubt on the Supreme Court's instruction in *State Oil* that lower courts must follow Supreme Court precedent, even when they believe that precedent has been undermined by later developments.

### B.   The CSA Constitutionally Regulates Intrastate Economic Activity That Substantially Affects Interstate Commerce

Even if *Raich*'s ultimate holding were not directly controlling here, the CSA's application to Plaintiffs falls well within Congress's authority under the Commerce Clause and Necessary and Proper Clause.  Plaintiffs do not and cannot dispute that the Supreme Court's "case law" under these clauses "firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  *Raich*, 545 U.S. at 17.  Yet Plaintiffs argue that such authority is justified only where the government can jump through a series of difficult hoops: showing that "the intrastate activity is 'an essential part of the larger regulatory scheme,'" Opp'n 12 (quoting *Raich*, 545 U.S. at 27), that intrastate activity

---

[5] Plaintiffs cite *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 415-16 (D.N.J. 2019), which came to the opposite conclusion that the Supreme Court's precedent upholding the male-only selective service was no longer binding.  However, the Fifth Circuit's decision is more persuasive and more consistent with the Supreme Court's instruction in *State Oil*.

"poses a threat to a national market," *id.* at 13 (quoting *Raich*, 545 U.S. at 18), that "the intrastate activities must 'in a substantial way interfere with or obstruct the exercise of the granted power,'" *id.* (quoting *United States v. Lopez*, 514 U.S. 549, 556 (1995)), and that intrastate economic activity "must have a 'substantial effect' . . . on 'defeating and obstructing' a federal interstate goal," *id.* at 14 (quoting *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942)).  Plaintiffs significantly understate Congress's authority by taking phrases from the Supreme Court's cases out of context.  Although the Court in *Raich* noted that the CSA's regulation of intrastate marijuana activities was an essential part of its regulatory scheme and was necessary to counteract a threat to a national market, the Supreme Court never held that such a tight fit between means and ends was *required* to sustain legislation under the Commerce Clause and Necessary and Proper Clause.  Plaintiffs articulate a test that resembles the sort of narrow tailoring that the Supreme Court has reserved for contexts such as abridgments of fundamental rights or discrimination against suspect classes.  But *Raich* expressly rejected heightened scrutiny in favor of "rational basis" review, holding that courts "need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding."  *Raich*, 545 U.S. at 22.

This rational basis review is highly deferential.  "A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends."  *Hodel v. Indiana*, 452 U.S. 314, 323-24 (1981); *see also United States v. Nascimento,* 491 F.3d 25, 42 (1st Cir. 2007) ("All that is necessary to deflect a Commerce Clause challenge to a general regulatory statute is a showing that the statute itself deals rationally with a class of activity that has a substantial

relationship to interstate or foreign commerce."). Rational basis review imposes a "low threshold," *Children's Health Def., Inc. v. Rutgers*, 93 F.4th 66, 87 (3d Cir. 2024), and courts apply "a high degree of judicial deference." *United States v. Knutson*, 113 F.3d 27, 29 (5th Cir. 1997). "Under the deferential standard of rational basis review, then, as long as there is some conceivable reason for the challenged classification of marijuana, the CSA should be upheld." *United States v. Pickard*, 100 F. Supp. 3d 981, 1005 (E.D. Cal. 2015).

Plaintiffs do not allege facts showing that the CSA fails this test. *First*, they do not seriously dispute that there exists a "rational basis for a congressional finding that the regulated activity affects interstate commerce." *Hodel*, 452 U.S. at 323. To the contrary, Plaintiffs affirmatively allege and argue that intrastate state-regulated marijuana activity affects interstate commerce in marijuana by reducing the interstate marijuana trade as more consumers allegedly switch from marijuana traded across state lines to marijuana grown in-state. *See* Opp'n 17-18; Compl. ¶¶ 21, 76.

In addition, it is rational to conclude that the regulated marijuana industry in Massachusetts fuels a different kind of marijuana-related interstate commerce: marijuana tourism. That is especially so because Massachusetts marijuana businesses gross hundreds of millions of dollars in sales each year,[6] and dispensaries such as Canna Provisions cater to out-of-state customers. Mem. 15-16. Plaintiffs criticize Defendant for "selective quotations from Canna Provisions' website," Opp'n 17 n.7, but Canna Provisions' overall web presence makes even clearer that it has marketed itself as a destination for marijuana tourism. The home page of its website displays the slogan in large, capital letters: "WE'RE NOT JUST A DISPENSARY, WE'RE A DESTINATION." Canna

---

[6] *See* Compl. ¶ 78 (more than $4 billion in gross sales of marijuana in Massachusetts since 2012).

Provisions, https://cannaprovisions.com/.[7]   It is a member of the Berkshires region's tourist organization, which features Canna Provisions on its website's homepage.  Visit the Berkshires | Official Guide to The Berkshire's, MA, berkshires.org.  A page on that website features Canna Provisions along with other marijuana retailers and urges visitors to "[e]xplore . . . cannatourism in the Berkshires," explaining that "[r]ecreational marijuana is legal in Massachusetts, and a proliferation of dispensaries in the Berkshires is adding to the region's appeal."  Nancy Macy on behalf of 1Berkshire, The Complete Guide to Cannabis in the Berkshires (Jan. 5, 2024), https://berkshires.org/the-complete-guide-to-cannabis-in-the-berkshires/.  As the Supreme Court held decades ago, Congress has the authority to regulate businesses that cater to tourists from out of state, even if the businesses' transactions occur wholly in-state.  *See Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964) (holding that Congress had the authority to regulate a motel whose operation was "of a purely local character" because it "serv[ed] travelers").

A rational basis also exists to conclude that, despite what Plaintiffs describe as "strict controls" in Massachusetts' system, Opp'n 18, some portion of the marijuana produced in Massachusetts will be diverted into the illicit market.  Experience has shown that even where states impose controls on regulated marijuana, some diversion occurs.  *See*, *e.g.*, *United States v. Bilodeau*, 24 F.4th 705 (1st Cir. 2022) (detailing scheme by individuals licensed to participate in Maine's medical marijuana market to divert marijuana to illicit interstate market); *United States v. Trevino*, 7 F.4th 414, 419-23 (6th Cir. 2021) (Michigan medical marijuana dispensary possessed large amounts of marijuana for illicit distribution); *United States v. Kleinman*, 880 F.3d 1020, 1029-30 (9th Cir. 2017) (California medical marijuana dispensary diverted marijuana to interstate

---

[7] Courts can take judicial notice of publicly available websites at the motion to dismiss stage.  *See Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020).

market); *United States v. Daleman*, No. 1:11-cr-00385-DAD-BAM, 2017 WL 1256743, at *6-7 (E.D. Cal. Feb. 17, 2017) (California medical marijuana grower made large unauthorized sales to undercover police officer).

Plaintiffs suggest that intrastate marijuana is somehow cordoned off from interstate commerce because it is not "fungible" with illicit marijuana traded interstate.  Opp'n 18-20.  But as they concede, the First Circuit has "'refuse[d] to accord decretory significance' to whether the commodity at issue is fungible" in conducting Commerce Clause analysis.  *United States v. Poulin*, 631 F.3d 17, 21 (1st Cir. 2011) (quoting *Nascimento*, 491 F.3d at 42).  Moreover, Plaintiffs misunderstand what fungible means and why fungibility was relevant to the analysis in *Raich* and the precedent that *Raich* built on, *Wickard v. Filburn*, 317 U.S. 111 (1942).  Fungible means "[c]ommercially interchangeable with other property of the same kind." *Fungible*, Black's Law Dictionary (11th ed. 2019).  Plaintiffs' argument that customers have "switch[ed] to purchasing state-regulated marijuana over illicit interstate marijuana," Opp'n 3, is essentially a concession that marijuana is fungible because consumers can and do substitute one type of marijuana for the other.  *Raich* explained that in *Wickard*, the fungibility of wheat was important because it showed the economic interconnectedness of intrastate wheat to the interstate market; that is, a farmer growing excess wheat for consumption on his farm could reduce the amount of wheat purchased from the interstate market, thereby affecting "price and market conditions" in the interstate market when considered in the aggregate with similar behavior by other farmers.  *Raich*, 545 U.S. at 18-19.  Similarly, "Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control would similarly affect price and market conditions" because consumers could switch back and forth between intrastate and interstate marijuana.  *Id.* at 19. Plaintiffs therefore acknowledge that marijuana is fungible in the relevant sense.

In sum, it can hardly be disputed that "a 'rational basis' exists for . . . concluding" that state-regulated marijuana activities "taken in the aggregate, substantially affect interstate commerce." *Id.* at 22.

*Second*, the CSA's regulation of intrastate marijuana activities is an "appropriate means to the attainment of a legitimate end." *Heart of Atlanta Motel*, 379 U.S. at 258.  The legitimate end is essentially the same one recognized in *Raich*: curtailing the marijuana trade.  Mem. 18.  Plaintiffs do not and cannot dispute that prohibiting the cultivation, manufacture, distribution, and possession of marijuana is a rational means to curtail the marijuana trade, including the interstate marijuana trade.  Instead, they argue that the CSA now fails the rational basis test because, as a result of changes in federal marijuana policy, the federal government is allegedly no longer pursuing the goal of "eliminating all marijuana nationwide."  Opp'n 17.  But Plaintiffs fail to respond to Defendant's argument that curtailing the marijuana trade is a legitimate governmental objective, regardless of whether the federal government pursues the objective in a manner calculated to eradicate marijuana use.  A law or policy that rationally pursues a legitimate goal satisfies the rational basis test "even if" if it viewed "as underinclusive because rational-basis review, unlike strict scrutiny, tolerates an 'imperfect fit between means and ends.'"  *Children's Health Def., Inc.*, 93 F.4th at 87 (quoting *Heller v. Doe*, 509 U.S. 312, 321 (1993)).  That one Supreme Court Justice has characterized federal marijuana policy as a "half-in, half-out regime," Opp'n 20 (quoting *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2236-37 (2021) (mem.) (statement of Thomas, J., respecting denial of certiorari)), does not call the CSA's constitutionality into question because the rational basis test does not require the federal government to go "all in" when pursuing legitimate objectives.

Furthermore, Plaintiffs fail to show that the federal laws and policies that have limited enforcement of the CSA, or the enforcement priorities reflected by those policies, are irrational. Plaintiffs allege that the Department of Justice currently follows a policy of prosecutorial discretion similar to the policy articulated in the 2013 Cole Memorandum. Compl. ¶¶ 82-83 (citing Deputy Attorney General James M. Cole, Memorandum for all United States Attorneys: Guidance Regarding Marijuana Enforcement, at 2 (Aug. 29, 2013) ("Cole Memorandum")). That memorandum guided federal prosecutors that when dealing with marijuana activities that comply with state law, they may focus law enforcement efforts on activity that threatens the federal interests in preventing distribution of marijuana to minors, marijuana proceeds reaching gangs and cartels, diversion of marijuana to states where it is illegal under state law, state-authorized marijuana activity being used as a cover for other illegal activity, violence and the use of firearms in marijuana dealing, drugged driving, marijuana growing on public lands, and marijuana possession or use on federal property. Cole Memorandum at 1-2. Otherwise, federal prosecutors could "rel[y] on states and local law enforcement agencies to address marijuana activity through enforcement of their own narcotics laws." *Id.* at 2. Plaintiffs make no argument that this alleged policy of prosecutorial discretion is irrational, nor could they. This alleged policy to focus law enforcement resources on important federal interests is manifestly rational on its face.

Plaintiffs also note that Congress, through the Rohrabacher-Farr Amendment, has mandated that the Department of Justice cannot spend federal funds to prevent states from implementing medical marijuana laws, while allowing the District of Columbia's medical marijuana law to take effect. Compl. ¶¶ 80-81; Opp'n 20.[8] Again, Plaintiffs articulate no basis on

---

[8] By contrast, before the enactment of Rohrabacher-Farr Amendment, on at least some occasions, the Department of Justice conducted law enforcement activity targeted at marijuana activities that complied with state medical marijuana laws. *See Raich*, 545 U.S. at 7.

which to conclude that these laws are irrational.  These laws rationally serve the purposes of avoiding friction between the federal government and state governments and allowing the states to develop a body of experience in dealing with medical marijuana that can inform future decisions by federal policymakers and policymakers in other states about whether to enact further changes in marijuana policy.  Like the Cole Memorandum (and the similar policy of prosecutorial discretion that Plaintiffs allege the Department of Justice is currently following), the Rohrabacher-Farr Amendment also has the effect of focusing federal law enforcement resources on the activities that are most likely to implicate important federal interests.  Defendant is not arguing, as Plaintiffs suggest, "that any time Congress *partially* (but not completely) bans an intrastate activity, the government can rely on 'laboratories of democracy' as a rational basis to justify any intrusion on state sovereignty."  Opp'n 22-23.  Rather, the specific policies at issue here, which pursue the objective of curtailing the marijuana trade while giving states a preeminent role in regulating aspects of the marijuana trade that do less to implicate federal law enforcement interests, are rational.

## III.   Plaintiffs Fail to State a Substantive Due Process Claim

In arguing that a fundamental right exists to cultivate and distribute marijuana, Opp'n 24-25, Plaintiffs make no effort to distinguish the litany of cases rejecting such a right, including a case from this Court just two years ago.  *See* Mem. 21-22 & n.6.  Plaintiffs argue that such a fundamental right exists because most states now authorize marijuana in some form.  Opp'n 25.  But they cite no case law supporting the proposition that an economic activity becomes a fundamental right when it is prohibited by the federal government and a significant minority of states, but allowed by a majority of states.[9]  Such an approach would run counter to the Supreme

---

[9] Plaintiffs halfheartedly argue that history from the founding era or the era of ratification of the Fourteenth Amendment support a fundamental right to deal marijuana, citing a few paragraphs of

Court's caution that courts must "exercise the utmost care" when asked to recognize new fundamental rights. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

Because no fundamental right exists to engage in marijuana activities, the CSA does not violate substantive due process so long as it survives rational basis scrutiny. *See Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 53 (1st Cir. 2005). Plaintiffs' argument that the CSA fails rational basis scrutiny is derived entirely from their Commerce Clause and Necessary and Proper Clause arguments. Opp'n 25. It fails for the same reasons. *See supra*, Part II.

## CONCLUSION

For the forgoing reasons and the reasons stated in Defendants' opening memorandum, the Court should dismiss the Complaint.

---

their Complaint. Opp'n 25 (citing Compl. ¶¶ 46-48). These paragraphs allege that the marijuana plant had "agricultural and industrial uses" during the founding era, Compl. ¶ 46, and began to be used for "medical and recreational purposes" in the mid-19th century, *id.* ¶ 47. But plaintiffs allege that "[d]uring this period" when people began to use marijuana as a drug, "states began to regulate" marijuana, including by banning its use, *id.* ¶ 49. By demonstrating that states banned marijuana soon after it began to be used as a drug, this incomplete discussion of marijuana's history cuts against Plaintiffs' claim of a fundamental right to engage in marijuana activities.

Dated:  April 5, 2024                        Respectfully Submitted,


                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             BRIGHAM J. BOWEN
                                             Assistant Director, Federal Programs Branch

                                             */s/ Jeremy S.B. Newman*
                                             JEREMY S.B. NEWMAN (Mass. Bar #
                                             688968)
                                             Trial Attorney
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, N.W.
                                             Washington, DC 20005
                                             Tel: (202) 532-3114
                                             Fax: (202) 616-8470
                                             Email: jeremy.s.newman@usdoj.gov

                                             *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

On April 5, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Massachusetts, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jeremy S.B. Newman*