UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CANNA PROVISIONS, INC.; GYASI
SELLERS; WISEACRE FARM, INC.;
VERANO HOLDINGS CORP.

      Plaintiffs,

v.

MERRICK GARLAND, in his official Capacity
as Attorney General of the United States

      Defendant.

Civil Action No. 23-30113-MGM

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 29)

July 1, 2024

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Almost twenty years ago, the Supreme Court declined to find that the reach of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, exceeded the bounds of federal authority when applied to noncommercial, wholly-intrastate activities involving small-scale cultivation and possession of marijuana for personal medical use. *Gonzalez v. Raich,* 545 U.S. 1 (2005). The plaintiffs had argued that Congress lacked authority under the Commerce Clause to criminalize the cultivation and possession of marijuana that never enters the stream of commerce and is consumed in compliance with state law and pursuant to a physician's prescription. Despite acknowledging "the troubling facts" of the case, the Court wrote that "[o]ur case law firmly establishes Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17.

Now, Plaintiffs, four owners of marijuana businesses that operate in Massachusetts and in compliance with state law, have asked this court to reach a different conclusion about the limits the Commerce Clause imposes on Congressional authority.[1] Plaintiffs support their position by detailing the extent of changed views about marijuana, state regulation, and federal enforcement since the Supreme Court decided *Raich*. While the Complaint has alleged persuasive reasons for a reexamination of the way the Controlled Substances Act ("CSA") regulates marijuana, the relief sought is inconsistent with binding Supreme Court precedent and, therefore, beyond the authority of this court to grant. Plaintiffs do not provide a basis for this court to disregard the broad reading of the Commerce Clause first announced in *Wickard v. Filburn*, 317 U.S. 111 (1942), and reaffirmed in *Raich. See State Oil v. Kahn*, 522 U.S. 3, 20 (1997) (explaining that it is the "[Supreme] Court's prerogative alone to overrule one of its precedents"); *see also United States v. Diggins*, 36 F.4th 302, 311 (1st Cir. 2022) ("We are in no position to overrule binding Supreme Court precedent."). Plaintiffs also argue that application of the CSA to their activities violates their rights to substantive due process; a claim raised in *Raich*, but not addressed by the Supreme Court. For the reasons that follow, this court discerns no plausible violation of substantive due process. Plaintiffs have not identified a basis for finding a fundamental right to engage in the cultivation and distribution of marijuana or that the CSA cannot survive rational basis review.

Finally, and as the Supreme Court noted in *Raich*, the absence of judicial relief from this court does not leave Plaintiffs without "another avenue of relief." *Raich*, 545 at 33. Plaintiffs can pursue their claims and seek the attention of the Supreme Court. They also are free to advocate for marijuana to be reclassified or removed from the CSA.

---

[1] Massachusetts permits marijuana to be sold to and consumed by adults for both medical and recreational purposes and Plaintiffs serve both types of consumers. Although there may be reasons to separately assess the basis for regulating these distinct types of consumption, neither Plaintiffs' Complaint, nor this decision, addresses those distinctions.

## II.   BACKGROUND

### A.   The CSA and Federal Enforcement

In 1970, Congress enacted the Comprehensive Drug Abuse Prevention and Control Act, which contained the CSA at Title II of the Act. *Raich*, 545 U.S. at 10, 12. At the time, marijuana was banned in all 50 states, subject to some limited exceptions. *Leary v. U.S.*, 395 U.S. 6, 16-17 (1969). In the preceding year, President Nixon had "declared a national 'war on drugs'" and the Supreme Court had "held certain provisions of the Marihuana Tax Act and other narcotics legislation unconstitutional." *Raich*, 545 U.S. at 10, 12. In *Raich*, the Supreme Court reported that "[t]he main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Id.* at 12. Congress attempted to effectuate these goals by creating "a closed regulatory system" under which it was "unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 13. All substances were "grouped together based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Id.* "Congress classified marijuana as a Schedule I drug," grouping it with other substances considered to have a "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Id.* at 14. The CSA makes it a federal criminal offense to manufacture, distribute, dispense, or possess Schedule I drugs, including marijuana, except within a preapproved research study. *Id.* In addition, the CSA imposes controls on the handling of the substances in all five classifications and separate federal approval is required before a drug can be marketed for medical use. *Id.* at 27-28; *see also* 21 U.S.C. §§ 321, 352.

Plaintiffs assert that marijuana has been miscategorized and, at the motion to dismiss stage, the court accepts as true their assertions about the safety of marijuana and its therapeutic benefits. The CSA provides a process for moving substances from one schedule to another and the Department

of Justice has commenced a process that could result in marijuana being moved from Schedule I to Schedule III. However, at this time, marijuana continues to be listed on Schedule I and, therefore, almost all activities that involve growing, processing, and possessing marijuana continue to be federal crimes. This is true even though thirty-eight states have adopted programs that legalize marijuana within a strict, state regulatory framework. Some states only permit marijuana used for medical purposes, while other states also allow marijuana to be consumed on a non-medical or adult-use basis.

Massachusetts is one of the states that operates a highly regulated system permitting both medical and adult-use marijuana businesses. In order to participate in the legal marijuana marketplace, all businesses must comply with exacting local and state regulatory requirements designed to ensure that all products containing marijuana are closely traced and that businesses operate in a manner that is safe for their customers, employees, and the local community. Rigorous regulation seeks to ensure that all the marijuana that moves through the legal Massachusetts market is grown, processed, and sold within the state. The regulatory scheme also includes taxes and community impact fees that generates significant revenue for state and local governments.

Plaintiffs have alleged there is data demonstrating that as state-regulated marijuana markets have grown, the amount of marijuana that travels in interstate and international commerce has declined dramatically. They assert that the federal government has responded to state-level legalization of marijuana by abandoning the "closed regulatory system" created by the CSA. Since 2014, Congress has included language in annual appropriations acts that prohibits the Department of Justice from using funds to challenge state laws legalizing medical marijuana, and Congress has not interfered with marijuana legalization programs adopted by the District of Columbia and several territories. For much of the last decade, the Department of Justice has acted in accordance with either a formal or informal policy not to prosecute individuals or companies under the CSA for conduct that complied with state laws that permit intrastate possession, cultivation, and distribution of marijuana.

4

B.  Plaintiffs

The claims in this case are asserted on behalf of four businesses openly operating in Massachusetts in full compliance with state laws and regulations. Despite the legality of their operations under state law, Plaintiffs have alleged that the federal criminalization of activities involving marijuana has negatively impacted their financial viability. Plaintiffs have alleged specific injuries suffered by each business and attributed to the criminalization of marijuana under the CSA, though they have not quantified the monetary value of those injuries.

Canna Provisions, Inc. ("Canna") is a Massachusetts corporation that operates a cultivation facility and two retail, adult-use marijuana dispensaries within Massachusetts. The Complaint alleges there are many businesses who will not work with Canna because of federal marijuana policy. Canna's marketing efforts have been limited because promotional companies and magazines have refused to work with it. Many business service providers, like banks, payroll services, 401(k) providers, and insurance companies also refuse to work with state-regulated marijuana businesses and, as a result, Canna has had to pay "higher interest rates, insurance premiums, and payments for goods and services." (Compl. at ¶ 36.) Although Canna was able to accept credit cards for a period of time, credit card processors are no longer willing to work with marijuana businesses, even those operating under state law. When Canna lost the ability to accept credit cards, the average amount spent by customers at Canna's retail stores "dropped by around 30%." (*Id.*) Canna has also been unable to sponsor job training programs through a career services organization operated by Massachusetts because marijuana is illegal under federal law. Finally, Canna has alleged that its employees and officers have had trouble obtaining mortgages and accessing personal banking services because they earn their income in the cannabis industry.

Gyasi Sellers ("Sellers") is an entrepreneur who operates a state-licensed courier service for adult-use marijuana. He is also in the process of obtaining a license to operate a marijuana retail

delivery service. Like Canna, the business operated by Sellers is not able to accept credit cards because credit card processors will not work with marijuana businesses. The inability to accept credit cards has created economic and security risks for his business. Sellers's customers cannot prepay for their orders and the drivers he employs must interact directly with customers to collect payments. Federal rules regarding marijuana also prevent him from making deliveries to the homes of clients who live in federally-funded housing. Finally, Sellers has been unable to access financial assistance for his business from the Small Business Administration because marijuana businesses, even those which comply with state law, are ineligible for SBA assistance.

Wiseacre Farm, Inc. ("Wiseacre") is a Massachusetts corporation licensed by Massachusetts to cultivate marijuana on its outdoor farm. Payroll processors, insurers, and banks have all refused to work with Wiseacre because its income is derived from the cultivation of marijuana, which is illegal under federal law. This has increased the operational costs and risks for Wiseacre, which must pay its employees by checks and work with banks who charge Wiseacre additional fees because it is a marijuana business. Wiseacre has also lost an opportunity to grow its operation because it was unable to lease land from another farm because Wiseacre's marijuana cultivation on a portion of the farm's land would have disqualified the entire farm from receiving any federal assistance.

Finally, Verano Holdings Corp. ("Verano") is a Canadian corporation with subsidiaries in several states. In Massachusetts, Verano's wholly-owned subsidiaries operate cultivation and manufacturing facilities and medical and adult-use dispensaries. Like Canna and Sellers, Verano is not able to accept credit cards. Verano is only able to work with a limited group of business service providers because its business is illegal under federal law. Although Verano has been able to obtain insurance, it pays higher insurance premiums than it would if its business were legal under federal law.

III.    ANALYSIS

A. Standing

This court's "judicial power is limited by Article III of the Constitution to actual cases and controversies" involving plaintiffs who have standing to sue. *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). "Standing is 'built on a single basic idea—the idea of separation of powers.'" *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. __, 144 S. Ct. 1540, 1545 (2024). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Id.* at 1554-55 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 487 (1982)). "'Our system of government leaves many crucial decisions to the political processes,' where democratic debate can occur and a wide variety of interests and views can be weighed." *Id.* at 1555 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)). The standing requirement is one of several tools that play an important, though not exclusive, role in preventing courts from inadvertently usurping those political processes. *Id.*

Since this court must be assured of its jurisdiction before reaching the merits of Plaintiffs' claims, the court turns first to Defendant's arguments that Plaintiffs lack standing. *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020). Although the government is the moving party, Plaintiffs, "as the party invoking federal jurisdiction," bear the burden of establishing that they have standing to bring their claims in this court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "There are two types of challenges to a court's subject matter jurisdiction: facial challenges and factual challenges." *Torres-Negrón v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007). As the government has raised only a facial challenge to standing, the court accepts as true the factual allegations in the Complaint and draws all reasonable inferences favorable to Plaintiffs. *Katz v.*

*Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012). Thus, to meet their burden, Plaintiffs "must sufficiently plead three elements: injury in fact, traceability, and redressability." *Kerin*, 770 F.3d at 981. Defendant challenges the sufficiency of Plaintiffs' allegations to establish an injury in fact and that any such injury is traceable to the CSA.

1.   Injury in Fact

Plaintiffs have alleged two types of injuries: economic harms and threat of prosecution. Defendant concedes that the economic harms alleged by Plaintiffs constitute an injury in fact, though it disputes that any such injuries are traceable to portions of the CSA challenged by Plaintiffs. On the other hand, Defendant contends that Plaintiffs' factual allegations about the significant changes to cultural and governmental views and policies regarding marijuana are inconsistent with their assertion of facing a threat of prosecution sufficient to constitute an injury in fact.

"For an injury in fact to be plausibly pled, it 'must be both concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 39 (1st Cir. 2023) (quoting *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016)). An injury is concrete if it "actually exists" and particular if it was caused by the defendant and the plaintiff was injured. *Id.* (internal quotations omitted). "In certain circumstances, 'the threatened enforcement of a law' may suffice as an 'imminent' Article III injury in fact." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). A pre-enforcement threat of future injury is sufficient to establish an injury in fact when a plaintiff "alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

In their Complaint, Plaintiffs allege that they are engaging in the intrastate cultivation, manufacture, possession, and distribution of marijuana. Since that conduct is clearly illegal under the CSA, even when permitted under Massachusetts law, federal prosecutors have a legal basis for prosecuting them. The question this court must answer is whether that threat of prosecution is credible or too remote and speculative. *Reddy*, 845 F.3d at 500. Citing *Reddy*, Defendant contends Plaintiffs' own allegations about the significant changes in federal policy erode the theoretical threat of enforcement down to the level of mere conjecture. *Reddy*, 845 F.3d at 500 (ruling a threat of prosecution was not sufficiently imminent to satisfy the Article III injury-in-fact requirement where preconditions to enforcement had not yet occurred).

Notwithstanding the informal policy described by Plaintiffs, Defendant "has not disclaimed any intention ever to enforce [the CSA]" against persons like Plaintiffs. *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 17 (1st Cir. 1996). Unlike the plaintiffs in *Reddy*, who faced no risk of criminal prosecution for their intended conduct and could not even face civil enforcement until after a specific buffer zone was defined and marked, Plaintiffs have already engaged in conduct proscribed by the CSA, a statute containing many provisions that continue to be actively enforced. A voluntary exercise of prosecutorial discretion applied to one type of violation does not neutralize the otherwise credible threat of prosecution that exists whenever a valid statute has been violated. *Gardner*, 99 F.3d at 15 (explaining that a threat of enforcement can be sufficient to establish standing "even though the official charged with enforcement responsibilities has not taken any enforcement action against the plaintiff and does not presently intend to take any such action").

### 2. Traceability

The court next considers whether Plaintiffs' Complaint sufficiently alleges that either the threat of prosecution or the economic injuries they identify are traceable to the challenged portions of the

CSA. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). An injury is "fairly traceable" if there is "'a causal connection between the injury and the conduct complained of.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). There is a direct, causal connection between the threat of prosecution Plaintiffs face and the challenged portions of the CSA. Plaintiffs have alleged they variously engage in the cultivation, manufacture, distribution, and possession of marijuana, wholly within Massachusetts and the CSA makes such activity a federal crime. In the absence of any dispute regarding redressability, the court finds Plaintiffs have demonstrated that they have standing under Article III to challenge the portions of the CSA applicable to intrastate activities related to marijuana. *See FDA*, 144 S. Ct. at 1556 ("Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish.").

The court also finds Plaintiffs have shown there is a causal connection between their economic injuries and the CSA. "The requirement that an alleged injury be fairly traceable to the defendant's action does not mean that the defendant's action must be the final link in the chain of events leading up to the alleged harm." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 45 (1st Cir. 2005). On the other hand, "the 'line of causation . . . must not be too speculative or too attenuated." *FDA*, 144 S. Ct. at 1557. Courts must use care in determining whether the causal chain is strong enough to sustain standing despite independent actions by third parties. *Dantzler*, 958 F.3d at 47-48. "[T]he fact that the deleterious effect of a statute is indirect will not by itself defeat standing." *Wine & Spirits Retailers, Inc.*, 418 F.3d at 45. However, "the plaintiff must show that the 'third parties will likely react in predictable ways' that in turn will likely injure the plaintiffs." *FDA*, 144 S. Ct. at 1557.

When credited, Plaintiffs' detailed allegations about their financial injuries meet that burden. Though individual decisions by specific third parties are the final link in the causal chain, the economic injury actually flows from the multitude of similar decisions made by many third parties, all responding

to the CSA. In the aggregate, the decisions have caused a predictable "downstream injury to plaintiffs" by dramatically reducing their options for obtaining business services compared to the options available to non-marijuana businesses. *Id.* Though the third-party decisions are not directly compelled by the CSA, they are all foreseeable responses to the risks and uncertainties the CSA imposes on transactions with state-regulated marijuana businesses and, together, they inflict a common injury on Plaintiffs. *See id.* at 1557-58. For these reasons, the court finds the Plaintiffs' economic injuries provide an additional basis for standing.

B.  Failure to State a Claim

The court turns to the government's arguments that this Complaint should be dismissed "for failure to state claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). Dismissal is appropriate if the complaint fails to establish at least one "material element necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotations omitted). A legal theory is actionable to the extent it does not conflict with binding precedent. *See Lyman v. Baker*, 954 F.3d 351, 370 (1st Cir. 2020) (affirming dismissal of claim foreclosed by controlling case). Defendant argues Plaintiffs' Complaint provides an insufficient basis for this court to find the CSA, as applied to Plaintiffs, either exceeds the authority

Congress has under the Commerce Clause and Necessary and Proper Clause or violates Plaintiffs'

rights to due process under the Fifth Amendment. The court addresses each argument in turn.

1.   Commerce Clause

"In our federal system, the National Government possesses only limited powers," which do

not include the power to criminalize an "act committed wholly within a State" unless the act has "some

relation to the execution of a power of Congress, or to some matter within the jurisdiction of the

United States." *Bond v. United States*, 572 U.S. 844, 854 (2014) (internal quotation omitted). Article I,

§ 8, of the Constitution vests Congress with authority "'[t]o make all Laws which shall be necessary

and proper for carrying into Execution' its authority to 'regulate Commerce with foreign Nations, and

among the several states.'" *Raich*, 545 U.S. at 5 (quoting Art. 1, § 8). In *Raich*, the Supreme Court

reaffirmed the already well-established view that the authority Congress enjoys under the Commerce

Clause permits the regulation of local, non-commercial activity, if there is a rational basis from which

Congress could have concluded that such activity would substantially affect interstate commerce. *Id.*

at 22. More specifically, the Supreme Court held that "[t]he CSA is a valid exercise of federal power,

even as applied to" the *Raich* plaintiffs because Congress had a rational basis for concluding that even

their limited, non-commercial cultivation and use of marijuana, if "taken in the aggregate" could

"substantially affect interstate commerce." *Id.* Notably, the Supreme Court deferred to the legislative

process by inquiring only whether Congress could rationally conclude the plaintiffs' conduct had a

substantial affect on interstate commerce, rather than whether the plaintiffs could prove that it did

not. *Id.*

This court must apply the same analytic framework in this case because Plaintiffs' Commerce

Clause claim is legally identical to the claim in *Raich. See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,

490 U.S. 477, 484 (1989) (explaining that only the Supreme Court can overrule its own decisions and

lower courts must apply a precedent with direct application, even if there is a basis for believing the precedent has been undermined by later developments). As in *Raich*, the question this court must answer is not whether, as a factual matter, Plaintiffs' activities substantially affect interstate commerce, but simply whether Congress had a rational basis to so conclude. *Raich*, 545 U.S. at 22. Since Congress is not required "to legislate with scientific exactitude," conflicts between actual data about how state-sanctioned intrastate marijuana markets interact with the illicit interstate marijuana market and congressional findings, or an absence of relevant findings, do not establish that Congress lacked a rational basis for using the CSA to criminalize the type of conduct alleged by Plaintiffs. *Id.* at 17.

Logically, if, as the Supreme Court found in *Raich*, an aggregation of limited, non-commercial marijuana activity provided that rational basis, this court must find the same to be true of Plaintiffs' larger-scale, commercial activities. *See Ne. Patients Grp. v. United Cannabis Patients and Caregivers of Me.*, 45 F. 4th 542, 547 (1st Cir. 2022) (noting that an intrastate medical marijuana market that welcomes customers from other states is part of a larger, interstate medical marijuana market). As Plaintiffs' own allegations demonstrate, they operate on a scale that far exceeds the activities at issue in *Raich* and *Wickard*. Their businesses, together with other Massachusetts marijuana businesses, necessarily impact interstate commerce in ways that would only increase were they to obtain the relief they seek. They consume utilities and supplies; utilize the internet and a variety of business services; recruit and train employees; and serve consumers, including individuals who travel from other states to obtain marijuana in Massachusetts.

Given the scale of Plaintiffs' operations, the court cannot find Congress lacks a rational basis for concluding Plaintiffs' activities substantially affect interstate commerce without ignoring the Supreme Court's broadly-worded holding in *Raich*. To reach a different outcome would require this court to independently determine that the underlying analysis in *Raich* cannot survive the developments in intrastate regulatory schemes and federal enforcement policy alleged by Plaintiffs.

Since only the Supreme Court can overrule *Raich*, this court concludes that Congress has authority under the Commerce Clause to regulate Plaintiffs' wholly-intrastate, state-sanctioned marijuana activities and dismisses their as-applied challenge to the CSA. Plaintiffs' argument, that the factual differences between their allegations and those considered in *Raich* simply permit this court to avoid application of *Raich* and substitute its own Commerce Clause analysis, has no realistic persuasive force.

2.   Substantive Due Process

Plaintiffs' substantive due process challenge to the CSA is also dismissed for failure to state a claim. There is simply no precedent for concluding that Plaintiffs enjoy a fundamental right to cultivate, process, and distribute marijuana. No such right is enumerated in the Constitution and, on remand following *Raich*, a sympathetic Ninth Circuit concluded there was no unenumerated right to use marijuana for medical purposes and the issue "remain[ed] in 'the arena of public debate and legislative action.'" *Raich v. Gonzalez* ("*Raich Remand*"), 500 F.3d 850, 866 (9th Cir. 2007) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (2007)). The Ninth Circuit acknowledged that positive views about the medical uses for marijuana had been growing, but explained "that legal recognition has not yet reached the point where a conclusion can be drawn that the right to use medical marijuana is 'fundamental' and 'implicit in the concept of ordered liberty.'" *Id.* Although many more states have since legalized marijuana, for both medical purposes and adult use, there is still no national consensus on this issue. Even if there were universally applicable laws permitting the cultivation, processing, and distribution of marijuana, legalization alone neither requires nor permits this court to recognize a fundamental right to engage in such conduct. *See e.g. Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 256-57 (2022) (ruling there is no fundamental right to obtain an abortion, despite fifty years of federal caselaw legalizing abortion and recognizing such a fundamental right). In the absence of a fundamental right to engage in the cultivation, processing, and distribution of marijuana, Plaintiffs

cannot prevail on their substantive due process claim. *See Hernández-Gotay v. United States,* 985 F.3d 71, 81 (1st Cir. 2021) (rejecting procedural and substantive due process challenges to a federal statute outlawing cock fighting where the statute did not infringe any cognizable liberty interest and had survived a Commerce Clause challenge).

IV.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (Dkt. No. 29) is ALLOWED and this case may now be closed.

It is So Ordered.

_/s/ Mark G. Mastroianni_____

MARK G. MASTROIANNI
United States District Judge